*342 Justice Scalia
delivered the opinion of the Court.
We are presented with one of the most expansive class actions ever. The District Court and the Court of Appeals approved the certification of a class comprising about one and a half million plaintiffs, current and former female employees of petitioner Wal-Mart who allege that the discretion exercised by their local supervisors over pay and promotion matters violates Title VII by discriminating against women. In addition to injunctive and declaratory relief, the plaintiffs seek an award of backpay. We consider whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2).
I
A
Petitioner Wal-Mart is the Nation's largest private employer. It operates four types of retail stores throughout the country: Discount Stores, Supercenters, Neighborhood Markets, and Sam’s Clubs. Those stores are divided into seven nationwide divisions, which in turn comprise 41 regions of 80 to 85 stores apiece. Each store has between 40 and 53 separate departments and 80 to 500 staff positions. In all, Wal-Mart operates approximately 3,400 stores and employs more than 1 million people.
*343 Pay and promotion decisions at Wal-Mart are generally committed to local managers’ broad discretion, which is exercised “in a largely subjective manner.” 222 F. R. D. 137, 145 (ND Cal. 2004). Local store managers may increase the wages of hourly employees (within limits) with only limited corporate oversight. As for salaried employees, such as store managers and their deputies, higher corporate authorities have discretion to set their pay within preestablished ranges.
Promotions work in a similar fashion. Wal-Mart permits store managers to apply their own subjective criteria when selecting candidates as “support managers,” which is the first step on the path to management. Admission to Wal-Mart’s management training program, however, does require that a candidate meet certain objective criteria, including an above-average performance rating, at least one year’s tenure in the applicant’s current position, and a willingness to relocate. But except for those requirements, regional and district managers have discretion to use their own judgment when selecting candidates for management training. Promotion to higher office — e. g., assistant manager, co-manager, or store manager — is similarly at the discretion of the employee’s superiors after prescribed objective factors are satisfied.
B
The named plaintiffs in this lawsuit, representing the 1.5 million members of the certified class, are three current or former Wal-Mart employees who allege that the company discriminated against them on the basis of their sex by denying them equal pay or promotions, in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U. S. C. § 2000e~l et seq.[1]
*344 Betty Dukes began working at a Pittsburg, California, Wal-Mart in 1994. She started as a cashier, but later sought and received a promotion to customer service manager. After a series of disciplinary violations, however, Dukes was demoted back to cashier and then to greeter. Dukes concedes she violated company policy, but contends that the disciplinary actions were in fact retaliation for invoking internal complaint procedures and that male employees have not been disciplined for similar infractions. Dukes also claims two male greeters in the Pittsburg store are paid more than she is.
Christine Kwapnoski has worked at Sam’s Club stores in Missouri and California for most of her adult life. She has held a number of positions, including a supervisory position. She claims that a male manager yelled at her frequently and screamed at female employees, but not at men. The manager in question “told [her] to ‘doll up,’ to wear some makeup, and to dress a little better.” App. 1003a.
The final named plaintiff, Edith Arana, worked at a Wal-Mart store in Duarte, California, from 1995 to 2001. In 2000, she approached the store manager on more than one occasion about management training, but was brushed off. Arana concluded she was being denied opportunity for advancement because of her sex. She initiated internal complaint procedures, whereupon she was told to apply directly to the district manager if she thought her store manager was being unfair. Arana, however, decided against that and never applied for management training again. In 2001, she was fired for failure to comply with Wal-Mart’s timekeeping policy.
These plaintiffs, respondents here, do not allege that Wal-Mart has any express corporate policy against the advancement of women. Rather, they claim that their local managers’ discretion over pay and promotions is exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees, see 42 U. S. C. *345 § 2000e-2(k). And, respondents say, because Wal-Mart is aware of this effect, its refusal to cabin its managers’ authority amounts to disparate treatment, see §2000e-2(a). Their complaint seeks injunctive and declaratory relief, punitive damages, and backpay. It does not ask for compensatory damages.
Importantly for our purposes, respondents claim that the discrimination to which they have been subjected is common to all Wal-Mart’s female employees. The basic theory of their case is that a strong and uniform “corporate culture” permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart’s thousands of managers — thereby making every woman at the company the victim of one common discriminatory practice. Respondents therefore wish to litigate the Title VII claims of all female employees at Wal-Mart’s stores in a nationwide class action.
C
Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), the party seeking certification must demonstrate, first, that
“(1) the class is so numerous that joinder of all members is impracticable;
“(2) there are questions of law or fact common to the class;
“(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
“(4) the representative parties will fairly and adequately protect the interests of the class.”
Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Respondents rely on Rule 23(b)(2), which applies when “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or correspond *346 ing declaratory relief is appropriate respecting the class as a whole.”[2]
Invoking these provisions, respondents moved the District Court to certify a plaintiff class consisting of “ ‘[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26,1998 who have been or may be subjected to Wal-Mart’s challenged pay and management track promotions policies and practices.’” 222 F. R. D., at 141-142 (quoting Plaintiff’s Motion for Class Certification in Case No. 3:01-cv-02252-CRB (ND Cal), Doc. 99, p. 37). As evidence that there were indeed “questions of law or fact common to” all the women of Wal-Mart, as Rule 23(a)(2) requires, respondents relied chiefly on three forms of proof: statistical evidence about pay and promotion disparities between men and women at the company, anecdotal reports of discrimination from about 120 of Wal-Mart’s female employees, and the testimony of a sociologist, Dr. William Bielby, who conducted a “social framework analysis” of Wal-Mart’s “culture” and personnel practices, and concluded that the company was “vulnerable” to gender discrimination. 603 F. 3d 671, 601 (CA9 2010) (en banc).
Wal-Mart unsuccessfully moved to strike much of this evidence. It also offered its own countervailing statistical and other proof in an effort to defeat Rule 23(a)’s requirements *347 of commonality, typicality, and adequate representation. Wal-Mart further contended that respondents’ monetary claims for backpay could not be certified under Rule 23(b)(2), first because that Rule refers only to injunctive and declaratory relief, and second because the backpay claims could not be manageably tried as a class without depriving Wal-Mart of its right to present certain statutory defenses. With one limitation not relevant here, the District Court granted respondents’ motion and certified their proposed class.[3]
D
A divided en banc Court of Appeals substantially affirmed the District Court’s certification order. 603 F. 3d 571. The majority concluded that respondents’ evidence of commonality was sufficient to “raise the common question whether Wal-Mart’s female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts) that may have worked to unlawfully discriminate against them in violation of Title VII.” Id., at 612 (emphasis deleted). It also agreed with the District Court that the named plaintiffs’ claims were sufficiently typical of the class as a whole to satisfy Rule 23(a)(3), and that they could serve as adequate class representatives, see Rule 23(a)(4). Id., at 614-615. With respect to the Rule 23(b)(2) question, the Ninth Circuit held that respondents’ backpay claims could be certified as part of a (b)(2) class because they did not “predominare]” over the requests for declaratory and injunctive relief, meaning they were not “superior in strength, influence, or authority” to *348 the nonmonetary claims. Id., at 616 (internal quotation marks and brackets omitted).[4]
Finally, the Court of Appeals determined that the action could be manageably tried as a class action because the District Court could adopt the approach the Ninth Circuit approved in Hilao v. Estate of Marcos, 103 F. 3d 767, 782-787 (1996). There compensatory damages for some 9,541 class members were calculated by selecting 137 claims at random, referring those claims to a special master for valuation, and then extrapolating the validity and value of the untested claims from the sample set. See 603 F. 3d, at 625-626. The Court of Appeals “s[aw] no reason why a similar procedure to that used in Hilao could not be employed in this case.” Id., at 627. It would allow Wal-Mart “to present individual defenses in the randomly selected 'sample cases,’ thus revealing the approximate percentage of class members whose unequal pay or nonpromotion was due to something other than gender discrimination.” Ibid., n. 56 (emphasis deleted).
We granted certiorari. 562 U. S. 1091 (2010).
1 — <
The class action is “an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.” Califano v. Yamasaki, 442 U. S. 682, 700-701 (1979). In order to justify a departure from that rule, “a class representative must be part of the class and 'possess the same interest and suffer the same injury’ as the *349 class members.” East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U. S. 395, 403 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U. S. 208, 216 (1974)). Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class 'whose claims they wish to litigate. The Rule's four requirements — numerosity, commonality, typicality, and adequate representation — “effectively ‘limit the class claims to those fairly encompassed by the named plaintiff’s claims.’ ” General Telephone Co. of Southwest v. Falcon, 457 U. S. 147, 156 (1982) (quoting General Telephone Co. of Northwest v. EEOC, 446 U. S. 318, 330 (1980)).
A
The crux of this case is commonality — the rule requiring a plaintiff to show that “there are questions of law or fact common to the class.” Rule 23(á)(2).[5] That language is easy to misread, since “[a]ny competently crafted class complaint literally raises common ‘questions.’ ” Naga-reda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 131-132 (2009). For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Com *350 monality requires the plaintiff to demonstrate that the class members “have suffered the same injury,” Falcon, supra, at 157. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways — by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
“What matters to class certification ... is not the raising of common ‘questions’ — even in droves — but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.” Nagareda, supra, at 132.
Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. We recognized in Falcon that “sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,” 457 U. S., at 160, and that certification is proper only if “the trial court is satisfied, after a *351 rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,” id., at 161; see id., at 160 (“[AJctual, not presumed, conformance with Rule 23(a) remains ... indispensable”). Frequently that “rigorous analysis” will entail some overlap with the merits of the''plaintiff’s underlying claim. That cannot be helped. “ ‘[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff’s cause of action.’” Id., at 160 (quoting Coopers & Lybrand v. Livesay, 437 U. S. 463, 469 (1978); some internal quotation marks omitted).[6] Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve *352 preliminary matters, e. g., jurisdiction and venue, is a familiar feature of litigation. See Szabo v. Bridgeport Machines, Inc., 249 F. 3d 672, 676-677 (CA7 2001) (Easterbrook, J.).
In this case, proof of commonality necessarily overlaps with respondents’ merits contention that Wal-Mart engages in a pattern or practice of discrimination.[7] That is so because, in resolving an individual’s Title VII claim, the crux of the inquiry is “the reason for a particular employment decision,” Cooper v. Federal Reserve Bank of Richmond, 467 U. S. 867, 876 (1984). Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members’ claims for relief will produce a common answer to the crucial question why was I disfavored.
B
This Court’s opinion in Falcon describes how the commonality issue must be approached. There an employee who claimed that he was deliberately denied a promotion on account of race obtained certification of a class comprising all employees wrongfully denied promotions and all applicants wrongfully denied jobs. 457 U. S., at 152. We rejected that composite class for lack of commonality and typicality, explaining:
“Conceptually, there is a wide gap between (a) an indi- . vidual’s claim that he has been denied a promotion [or *353 higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual’s claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.” Id., at 157-158.
Falcon suggested two ways in which that conceptual gap might be bridged. First, if the employer “used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a).” Id., at 159, n. 15. Second, “[significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective de-cisionmaking processes.” Ibid. We think that statement precisely describes respondents’ burden in this case. The first manner of bridging the gap obviously has no application here; Wal-Mart has no testing procedure or other company-wide evaluation method that can be charged with bias. The whole point of permitting discretionary decisionmaking is to avoid evaluating employees under a common standard.
The second manner of bridging the gap requires “[significant proof” that Wal-Mart “operated under a general policy of discrimination.” That is entirely absent here. Wal-Mart’s announced policy forbids sex discrimination, see App. 1567a-1596a, and as the District Court recognized the company imposes penalties for denials. of equal employment opportunity, 222 F. R. D., at 154. The only evidence of a “general policy of discrimination” respondents produced was the testimony of Dr. William Bielby, their sociological *354 expert. Relying on “social framework” analysis, Bielby testified that Wal-Mart has a “strong corporate culture,” that makes it “vulnerable” to “gender bias.” Id., at 152. He could not, however, “determine with any specificity how regularly stereotypes play a meaningful role in employment decisions at Wal-Mart. At his deposition ... Dr. Bielby conceded that he could not calculate whether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking.” 222 F. R. D. 189,192 (ND Cal. 2004). The parties dispute whether Bielby’s testimony even met the standards for the admission of expert testimony under Federal Rule of Evidence 702 and our Dau-bert case, see Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U. S. 579 (1993).[8] The District Court concluded that Daubert did not apply to expert testimony at the certification stage of class-action proceedings. 222 F. R. D., at 191. We doubt that is so, but even if properly considered, Bielby’s testimony does nothing to advance respondents’ case. “[Wjhether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking” is the essential question on which respondents’ theory of commonality depends. If Bielby admittedly has no answer to that question, we can safely disregard *355 what he has to say. It is worlds away from “[significant proof” that Wal-Mart “operated under a general policy of discrimination.”
C
The only corporate policy that the plaintiffs’ evidence convincingly establishes is Wal-Mart’s “policy” of allowing discretion by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices. It is also a very common and presumptively reasonable way of doing business — one that we have said “should itself raise no inference of discriminatory conduct,” Watson v. Fort Worth Bank & Trust, 487 U. S. 977, 990 (1988).
To be sure, we have recognized that, “in appropriate cases,” giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory — since “an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.” Id., at 990-991. But the recognition that this type of Title VII claim “can” exist does not lead to the conclusion that every employee in a company using a system of discretion has such a claim in common. To the contrary, left to their own devices most managers in any corporation — and surely most managers in a corporation that forbids sex discrimination — would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all. Others may choose to reward various attributes that produce disparate impact — such as scores on general aptitude tests or educational achievements, see Griggs v. Duke Power Co., 401 U. S. 424, 431-432 (1971). And still other managers may be guilty of intentional discrimination that produces a sex-based disparity. In such a company, demonstrating the invalidity of one manager’s use *356 of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees’ Title VII claims will in fact depend on the answers to common questions.
Respondents have not identified a common mode of exercising discretion that pervades the entire company — aside from their reliance on Dr. Bielby’s social-framework analysis that we have rejected. In a company of Wal-Mart’s size and geographical scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction. Respondents attempt to make that showing by means of statistical and anecdotal evidence, but their evidence falls well short.
The statistical evidence consists primarily of regression analyses performed by Dr. Richard Drogin, a statistician, and Dr. Marc Bendick, a labor economist. Drogin conducted his analysis region by region, comparing the number of women promoted into management positions with the percentage of women in the available pool of hourly workers. After considering regional and national data, Drogin concluded that “there are statistically significant disparities between men and women at Wal-Mart . . . [and] these disparities . . . can be explained only by gender discrimination.” 603 F. 3d, at 604 (internal quotation marks omitted). Bendick compared work-force data from Wal-Mart and competitive retailers and concluded that Wal-Mart “promotes a lower percentage of women than its competitors.” Ibid.
Even if they are taken at face value, these studies are insufficient to establish that respondents’ theory can be proved on a elasswide basis. In Falcon, we held that one named plaintiff’s experience of discrimination was insufficient to infer that “discriminatory treatment is typical of [the employer’s employment] practices.” 457 U. S., at 158. A similar failure of inference arises here. As Judge Ikuta observed in her dissent, “[information about disparities at the regional and national level does not establish the existence *357 of disparities at individual stores, let alone raise the inference that a company-wide policy of discrimination is implemented by discretionary decisions at the store and district level.” 603 F. 3d, at 637. A regional pay disparity, for example, may be attributable to only a small set of Wal-Mart stores, and cannot by itself establish the uniform, store-by-store disparity upon which the plaintiffs’ theory of commonality depends.
There is another, more fundamental, respect in which respondents’ statistical proof fails. Even if it established (as it does not) a pay or promotion pattern that differs from the nationwide figures or the regional figures in all' of Wal-Mart’s 3,400 stores, that would still not demonstrate that commonality of issue exists. Some managers will claim that the availability of women, or qualified women, or interested women, in their stores’ area does not mirror the national or regional statistics. And almost all of them will claim to have been applying some sex-neutral, performance-based criteria — whose nature and effects will differ from store to store. In the landmark case of ours which held that giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory, the plurality opinion conditioned that holding ón the corollary that merely proving that the discretionary system has produced a racial or sexual disparity is not enough. “The plaintiff must begin by identifying the specific employment practice that is challenged.” Watson, supra, at 994; accord, Wards Cove Packing Co. v. Atonio, 490 U. S. 642, 656 (1989) (approving that statement), superseded by statute on other grounds, 42 U. S. C. § 2000e-2(k). That is all the more necessary when a class of plaintiffs is sought to be certified. Other than the bare existence of delegated discretion, respondents have identified no “specific employment practice” — much less one that ties all their 1.5 million claims together. Merely showing that Wal-Mart’s policy of discretion has produced an overall sex-based disparity does not suffice.
*358 Respondents’ anecdotal evidence suffers from the same defects, and in addition is too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory. In Teamsters v. United States, 431 U. S. 324 (1977), in addition to substantial statistical evidence of companywide discrimination, the Government (as plaintiff) produced about 40 specific accounts of racial discrimination from particular individuals. See id., at 338. That number was significant because the company involved had only 6,472 employees, of whom 571 were minorities, id., at 337, and the class itself consisted of around 334 persons, United States v. T. I. M. E.-D. C., Inc., 517 F. 2d 299, 308 (CA5 1975), overruled on other grounds, Teamsters, supra. The 40 anecdotes thus represented roughly one account for every eight members of the class. Moreover, the Court of Appeals noted that the anecdotes came from individuals “spread throughout” the company who “for the most part” worked at the company’s operational centers that employed the largest numbers of the class members. 517 F. 2d, at 315, and n. 30. Here, by contrast, respondents filed some 120 affidavits reporting experiences of discrimination — about 1 for every 12,500 class members — relating to only some 235 out of Wal-Mart’s 3,400 stores. 603 F. 3d, at 634 (Ikuta, J., dissenting). More than half of these reports are concentrated in only 6 States (Alabama, California, Florida, Missouri, Texas, and Wisconsin); half of all States have only one or two anecdotes; and 14 States have no anecdotes about Wal-Mart’s operations at all. Id., at 634-635, and n. 10. Even if every single one of these accounts is true, that would not demonstrate that the entire company “operated] under a general policy of discrimination,” Falcon, 457 U. S., at 159, n. 15, which is what respondents must show to certify a companywide class.[9]
*359 The dissent misunderstands the nature of the foregoing analysis. It criticizes our focus on the dissimilarities between the putative class members on the ground that we have “blend[ed]” Rule 23(a)(2)’s commonality requirement with. Rule 23(b)(3),s inquiry into whether common questions “predominate” over individual ones. See post, at 374-376 (Ginsburg, J., concurring in part and dissenting in part). That is not so. We quite agree that for purposes of Rule 23(a)(2) “ ‘[e]ven a single [common] question’ ” will do, post, at 376, n. 9 (quoting Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149, 176, n. 110 (2003)). We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is “[e]ven a single [common] question.” And there is not here. Because respondents provide no convincing proof of a companywide discriminatory pay and promotion policy, we have concluded that they have not established the existence of any common question.[10]
In sum, we agree with Chief Judge Kozinski that the members of the class
“held a multitude of jobs, at different levels of Wal-Mart’s hierarchy, for variable lengths of time, in 3,400 stores, sprinkled acroos 50 statec, with a kaleidoscope of supervisors (male and female), subject to a variety of *360 regional policies that all differed .... Some thrived while others did poorly. They have little in common but their sex and this lawsuit.” 603 F. 3d, at 652 (dissenting opinion).
Ill
We also conclude that respondents’ claims for backpay were improperly certified under Federal Rule of Civil Procedure 23(b)(2). Our opinion in Ticor Title Ins. Co. v. Brown, 511 U. S. 117, 121 (1994) (per curiam), expressed serious doubt about whether claims for monetary relief may be certified under that provision. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.
A
Rule 23(b)(2) allows class treatment when “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.” One possible reading of this provision is that it applies only to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all. We need not reach that broader question in this case, because we think that, at a minimum, claims for individualized relief (like the backpay at issue here) do not satisfy the Rule. The key to the (b)(2) class is “the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.” Nagareda, 84 N. Y. U. L. Rev., at 132. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not *361 authorize class certification when each class member would be entitled to an individualized award of monetary damages.
That interpretation accords with the history of the Rule. Because Rule 23 “stems from equity practice” that predated its codification, Amchem, Products, Inc. v. Windsor, 521 U. S. 591, 613 (1997), in determining its meaning we have previously looked to the historical models on which the Rule was based, Ortiz v. Fibreboard Corp., 527 U. S. 815, 841-845 (1999). As we observed in Amchem, “[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples” of what (b)(2) is meant to capture. 521 U. S., at 614. In particular, the Rule reflects a series of decisions involving challenges to racial segregation — conduct that was remedied by a single classwide order. In none of the cases cited by the Advisory Committee as examples of (b)(2)’s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction. See Advisory Committee’s Note, 28 U. S. C. App., pp. 1260-1261 (1964 ed., Supp. II) (citing cases); e. g., Potts v. Flax, 313 F. 2d 284, 289, n. 5 (CA5 1963); Brunson v. Board of Trustees of School Dist. No. 1, Clarendon Cty., 311 F. 2d 107, 109 (CA4 1962) (per curiam); Frasier v. Board of Trustees of Univ. of N. C., 134 F. Supp. 589, 593 (MDNC 1955) (three-judge court), aff’d, 350 U. S. 979 (1956) (per curiam).
Permitting the combination of individualized and class-wide relief in a (b)(2) class is also inconsistent with the structure of Rule 23(b). Classes certified trader (b)(1) and (b)(2) share the most traditional justifications for class treatment— that individual adjudications would be impossible or unworkable, as in a (b)(1) class,[11] or that the relief sought must per *362 force affect the entire class at once, as in a (b)(2) class. For that reason these are also mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action. Rule 23(b)(3), by contrast, is an “adventuresome innovation” of the 1966 amendments, Am-chem, 521 U. S., at 614 (internal quotation marks omitted), framed for situations “in which 'class-action treatment is not as clearly called for/” id., at 615 (quoting Advisory Committee’s Notes, 28 U. S. C. Ápp., p. 697 (1994 ed.)). It allows class certification in. a much wider set of circumstances but with greater procedural protections. Its only prerequisites are that “the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Rule 23(b)(3). And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive “the best notice that is practicable under the circumstances” and to withdraw from the class at their option. See Rule 23(c)(2)(B).
Given that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3). The procedural protections attending the (b)(3) class — predominance, superiority, mandatory notice, and the right to opt out — are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class. When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating *363 the dispute. Predominance and superiority are self-evident. But with respect to each class member's individualized claim for money, that is not so — which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class. Similarly, (b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause. In the context of a class action predominantly for money damages we have held that absence of notice and opt out violates due process. See Phillips Petroleum Co. v. Shutts, 472 U. S. 797, 812 (1985). While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.
B
Against that conclusion, respondents argue that their claims for backpay were appropriately certified as part of a class under Rule 23(b)(2) because those claims do not “predominate” over their requests for injunctive and declaratory relief. They rely upon the Advisory Committee’s statement that Rule 23(b)(2) “does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.” 28 U. S. C. App., p. 1260 (1964 ed., Supp. II) (emphasis added). The negative implication, they argue, is that it does extend to cases in which the appropriate final relief relates only partially and nonpredominantly to money damages. Of course it is the Rule itself, not the Advisory Committee’s description of it, that governs. And a mere negative inference does not in our view suffice to establish a disposition that has no basis in the Rule’s text, and that does obvious violence to the Rule’s structural features. The mere “predominance” of a proper (b)(2) injunctive claim *364 does nothing to justify elimination of Rule 23(b)(3)’s procedural protections: It neither establishes the superiority of class adjudication over individual adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request — even a “predominating request” — for an injunction.
Respondents’ predominance test, moreover, creates perverse incentives for class representatives to place at risk potentially valid claims for monetary relief. In this case, for example, the named plaintiffs declined to include employees’ claims for compensatory damages in their complaint. That strategy of including only backpay claims made it more likely that monetary relief would not “predominate.” But it also created the possibility (if the predominance test were correct) that individual class members’ compensatory-damages claims would be precluded by litigation they had no power to hold themselves apart from. If it were determined, for example, that a particular class member is not entitled to backpay because her denial of increased pay or a promotion was not the product of discrimination, that employee might be collaterally estopped from independently seeking compensatory damages based on that same denial. That possibility underscores the need for plaintiffs with individual monetary claims to decide for themselves whether to tie their fates to the class representatives’ or go it alone — a choice Rule 23(b)(2) does not ensure that they have.
The predominance test would also require the District Court to reevaluate the roster of class members continually. The Ninth Circuit recognized the necessity for this when it concluded that those plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices. The Court of Appeals’ response to that difficulty, however, was not to eliminate all former employees from the certified class, but to eliminate only those who had left the company’s employ by the date *365 the complaint was filed. That solution has no logical connection to the problem, since those who have left their Wal-Mart jobs since the complaint was filed have no more need for prospective relief than those who left beforehand. As a consequence, even though the validity of a (b)(2) class depends on whether “final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole,” Rule 23(b)(2) (emphasis added), about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court’s time. Which indeed it is, since if a backpay action were properly certified for class treatment under (b)(8), the ability to litigate a plaintiff’s backpay claim as part of the class would not turn on the irrelevant question whether she is still employed at Wal-Mart. What follows from this, however, is not that some arbitrary limitation on class membership should be imposed but that the backpay claims should not be certified under Rule 23(b)(2) at all.
Finally, respondents argue that their backpay claims are appropriate for a (b)(2) class action because a backpay award is equitable in nature. The latter may be true, but it is irrelevant. The Rule does not speak of “equitable” remedies generally but of injunctions and declaratory judgments. As Title VII itself makes pellucidly clear, backpay is neither. See 42 U. S. C. § 2000e-5(g)(2)(B)(i) and (ii) (distinguishing between declaratory and injunctive relief and the payment of “backpay,” see § 2000e~5(g)(2)(A)).
C
In Allison v. Citgo Petroleum Corp., 151 F. 3d 402, 415 (CA5 1998), the Fifth Circuit held that a (b)(2) class would permit the certification of monetary relief that is “incidental to requested injunctive or declaratory relief,” which it de *366 fined as “damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunc-tive or declaratory relief.” In that court’s view, such “incidental damages should not require additional hearings to resolve the disparate merits of each individual’s case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.” Ibid. We need not decide in this case whether there are any forms of “incidental” monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause. Respondents do not argue that they can satisfy this standard, and in any event they cannot.
Contrary to the Ninth Circuit’s view, Wal-Mart is entitled to individualized determinations of each employee’s eligibility for backpay. Title VII includes a detailed remedial scheme. If a plaintiff prevails in showing that an employer has discriminated against him in violation of the statute, the court “may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as.may be appropriate, [including] reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.” §2000e-5(g)(1). But if the employer can show that it took an adverse employment action against an employee for any reason other than discrimination, the court cannot order the “hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay.” § 2000e-5(g)(2)(A).
We have established a procedure for trying pattern-or-practice cases that gives effect to these statutory requirements. When the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, “a district court must usually conduct additional proceedings ... to determine the scope of individual relief.” Teamsters, 431 U. S., at 361. At this phase, the burden of proof will shift to the company, but it *367 will have the right to raise any individual affirmative defenses it may have, and to “demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.” Id., at 362.
The Court of Appeals believed that it was possible to replace such proceedings with Trial by Formula. A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery — without further individualized proceedings. 603 F. 3d, at 626-627. We disapprove that novel project. Because the Rules Enabling Act forbids interpreting Rule 23 to “abridge, enlarge or modify any substantive right,” 28 U. S. C. § 2072(b); see Ortiz, 627 U. S., at 845, a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims. And because the necessity of that litigation will prevent backpay from being “incidental” to the classwide injunction, respondents’ class could not be certified even assuming, arguendo, that “incidental” monetary relief can be awarded to a 23(b)(2) class.
* * *
The judgment of the Court of Appeals is

Reversed.

 The complaint included seven named plaintiffs, but only three remain part of the certified class as narrowed by the Court of Appeals.

 Rule 23(b)(1) allows a class to be maintained where “prosecuting separate actions by or against individual class members would create a risk of” either “(A) inconsistent or varying adjudications,” or “(B) adjudications... that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.” Rule 23(b)(3) states that a class may be maintained where “questions of law or fact common to class members predominate over any questions affecting only individual members,” and a class action would be “superior to other available methods for fairly and efficiently adjudicating the controversy.” The applicability of these provisions to the plaintiff class is not before us.

 The District Court excluded backpay claims based on promotion opportunities that had not been publicly posted, for the reason that no applicant data could exist for such positions. 222 F. R. D. 137,182 (ND Cal. 2004). It also decided to afford class members notice of the action and the right to opt out of the class with respect to respondents’ punitive-damages claim. Id, at 173.

 To enable that result, the Court of Appeals trimmed the (b)(2) class in two ways: First, it remanded that part of the certification order which included respondents' punitive-damages claim in the (b)(2) class, so that the District Court might consider whether that might cause the monetary relief to predominate. 603 F. 3d, at 621. Second, it accepted in part Wal-Mart’s argument that since class members whom it no longer employed had no standing to seek injunctive or declaratory relief, as to them monetary claims must predominate. It excluded from the certified class “those putative class members who were no longer Wal-Mart employees at the time Plaintiffs’ complaint was filed,” id., at 623 (emphasis added).

 We have previously stated in this context that “[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both sorvo as guido-posts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff’s claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.” General Telephone Co. of Southwest v. Falcon, 457 U. S. 147, 157-158, n. 13 (1982). In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a).

 A statement in one of our prior eases, Eisen v. Carlisle & Jacquelin, 417 U. S. 156, 177 (1974), is sometimes mistakenly cited to the contrary: “We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.” But in that ease, the judge had conducted a preliminary inquiry into the merits of a suit, not in order to determine the propriety of certification under Rules 23(a) and (b) (he had already done that, see id., at 165), but in order to shift the cost of notice required by Rule 23(c)(2) from the plaintiff to the defendants. To the extent the quoted statement goes beyond the permissibility of a merits inquiry for any other pretrial purpose, it is the purest dictum and is contradicted by our other cases.
Perhaps the most common example of considering a merits question at the Rule 23 stage arises in class-action suits for securities fraud. Rule 23(b)(3)’s requirement that “questions of law or fact common to class members predominate over any questions affecting only individual members” would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation. But the problem dissipates if the plaintiffs can establish the applicability of the so-called “fraud on the market” presumption, which says that all traders who purchase stock in an efficient market are presumed to have relied on the accuracy of a company’s public statements. To invoke this presumption, the plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market, Erica P. John Fund, Inc. v. Halliburton Co., 563 U. S. 804, 809 (2011), an issue they will surely have to prove again at trial in order to make out their case on the merits.

 In a pattern-or-practice case, the plaintiff tries to “establish by a preponderance of the evidence that . . . discrimination was the company’s standard operating procedure!,] the regular rather than the unusual practice.” Teamsters v. United States, 431 U. S. 324, 336 (1977); see also Franks v. Bowman Transp. Co., 424 U. S. 747, 772 (1976). If he succeeds, that showing will support a rebuttable inference that all class members were victims of the discriminatory practice, and will justify “an award of prospective relief,” such as “an injunctive order against continuation of the discriminatory practice.” Teamsters, supra, at 361.

 Bielby’s conclusions in this ease have elicited criticism from the very scholars on whose conclusions he relies for his social-framework analysis. See Monahan, Walker, & Mitchell, Contextual Evidence of Gender Discrimination: The Ascendance of “Social Frameworks,” 94 Va. L. Rev. 1715, 1747 (2008) (“[Bielby’s] research into conditions and behavior at Wal-Mart did not meet the standards expected of social scientific research into stereotyping and discrimination”); id., at 1745,1747 (“[A] social framework necessarily contains only general statements about reliable patterns of relations among variables . . . and goes no further. .. . Dr. Bielby claimed to present a social framework, but he testified about social facts specific to Wal-Mart”); id., at 1747-1748 (“Dr. Bielby’s report provides no verifiable method for measuring and testing any of the variables that were crucial to his conclusions and reflects nothing more than Dr. Bielby’s ‘expert judgment’ about how general stereotyping research applied to all managers across all of Wal-Mart’s stores nationwide for the multi-year class period”).

 The dissent says that we have adopted “a rule that a discrimination claim, if accompanied by anecdotes, must supply them in numbers proportionate to the size of the class. ” Post, at 371, n. 4 (Ginsburg, J., concurring in part and dissenting in part). That is not quite accurate. A discrimina- *359 tíon claimant is froo to supply as few anecdotes ao ho wichcB; But when the claim is that a company operates under a general policy of discrimination, a few anoedoteo selected from literally millions of employment dcci sions prove nothing at all.

 For this reason, there is no force to the diosent’o attempt to diotinguiah Falcon on the ground that in that ease there were “ ‘no common questions of law or fact’ between the claimo of the lead plaintiff and the applicant class,” post, at 375, n. 7 (quoting 457 U. S., at 162 (Burger, C. J., concurring in part and dissenting in part)). Here also there is nothing to unite all of the plaintiffs’ claims, since (contrary to the dissent’s contention, post, at 375, n, 7) the same employment practicoo do not “touch and concern all members of the class.”

 Rulo 23(b)(1) applies where separate actions by or against individual class members would ereato a risk of “establiflh[ing] incompatible stand ards of conduct for the party opposing the class,” Rule 23(b)(1)(A), such as “whore the party is obliged by law to treat the members of the class alike,” Amchem Products, Inc. v. Windsor, 521 U. S. 591, 614 (1997), or whoro individual adjudications “as a practical matter, would bo dispositive *362 of the Interests of the other members not parties to the individual adjudi-cationo or would substantially impair or impede their ability to protect their interests,” Rule 23(b)(1)(B), such as in “ 'limited fund’ eases, ... in which numcrouo pcraono malee claimo against a fund inoufficicnt to satisfy all claims,” id., at 614.