*1331 WILLIAMS, Senior Circuit Judge,
dissenting:
Collective Bargaining Agreements (“CBAs”) between the United Mine Workers of America (“UMWA”) and Chevron Mining allow the union, on reasonable notice to the employer, to “designate memorial periods not exceeding a total of ten (10) days during the term of this Agreement.” Joint Appendix (“J.A.”) 96. The CBAs also contain provisions requiring arbitration of disputes. Under established authority, see Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 381, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), such provisions forbid strikes, as the court recognizes, see Maj. Op. at 1322-23. The NLRB nonetheless construed the memorial-period clauses to create a de facto exception to the strike ban, and the court affirms. The conclusions of both the agency and the court violate the. established principle (most familiar to us from anti-discrimination laws) that a right to do a thing at will, or for no reason at all, does not normally encompass a right to do it for reasons that contradict rights reserved to another party (here, the employer’s right not to be subject to strikes while the CBAs are in effect). See Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S.Ct. 2541, 2560-61, 180 L.Ed.2d 374 (2011) (“[I]f the employer can show that it took an adverse employment action against an employee for any reason other than discrimination, the court cannot order the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any backpay.”) (internal quotation marks and citation omitted); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 282 (4th Cir.2000) (noting that an employer’s “blunt” and even “unfair” behavior does not in itself support “an actionable claim of discrimination”).
To reach its conclusion, the court makes a rather odd use of a stipulation that the parties agreed on before the Board, namely, that “[t]he history and purpose of the Memorial Periods Clause was addressed” in various named documents. J.A. 12-13 ¶ 17. The court (1) gives this provision a far more powerful meaning than its text will bear; (2) selects one document from among the four for a wholly dominant role, namely one district court decision, Arch of W. Va. v. Mine Workers Local Union 5958, C.A. No. 2:96-2008 (S.D.W.Va. Nov. 25, 1996) (“Arch”); and (3) misreads that one document. First, the stipulation appears to mean no more than would a parallel statement about Farrand’s: “The history and purpose of the United States Constitution is addressed in Max Far-raNd’s the Framing of the Constitution of the United States (1913).” This would not license a constitutional interpreter to exalt one passage in. Farrand’s above all others, or to disregard ordinary principles of law such as the one noted above — that a right to do something for no reason commonly doesn’t entail a right to do it in ways or for purposes that frustrate another party’s established rights. The parties’ stipulation did not require the Board (or us) to pitch such principles overboard. Second, while the court says that the other three documents don’t contradict its reading of Arch, it is equally true that none of them hints at anything like the view the court here ascribes to Arch.
Third and most important, the court’s preferred item, the district court decision in Arch, provides only the most dubious support for the court’s conclusion. The union there sought employer permission “to allow any individuals employed at [specified plants] to go deer hunting during the first week of the deer hunting season.” Id. at *3-4 ¶ 6. When it did not receive this permission, the union first “threatened to call a ‘memorial period,’ ” on Monday, Tuesday, Wednesday, and Saturday, November 25, 26, 27, and 30, 1996, if the employer did not make concessions *1332 on the deer hunting issue. When it did not, the union called a memorial period for those days. Id. at *4 ¶¶ 8-10. The Arch decision does not specify this, but it strongly suggests that the union members used the memorial days simply as an alternate means to take the deer hunting leave that their employer had refused. Indeed, the Board, in the decision under review in this case (which bears Chevron’s prior name, see Petitioner’s Br. i), recognized this aspect of Arch, saying that the union there used memorial periods to “take advantage of the opening of hunting season.” Pittsburgh & Midway Coal Mining Co., 355 NLRB 1210, 1213 (2010); but cf. id. at 1213 (saying that the union’s purpose was “to further its position in a dispute over a contractual attendance rule”). (In 2011 the deer hunting season opened November 21 and closed December 3, see West Virginia Dep’t of Nat. Res., Hunting and Trapping: July 2011-June 2012 Regulations Summary (2011), available at http://www. wvdnr.gov/hunting/Regsl 112/2011_ Hunting_Regs.pdf). Thus the union members in Arch seem to have used the memorials for sport rather than for a strike.
The Arch decision contains, to be sure, far broader language than the case warranted. Having said that the clause entitled the union to exercise its right to memorial days for “good or bad reasons,” it simply leapt to a characterization of the right as “a bargaining chip that the Union can use in an often ‘fractious’ relationship ... between labor and management.” Arch, at *6 ¶ 6. It never considered or alluded to the principle that prevents a party from using broadly formulated rights to sweep aside rights held by others. The upshot, then, of the court’s opinion here is to subordinate that principle to a district court’s dictum.