HAYNES, Circuit Judge,
dissenting:
The majority opinion allows any group of plaintiffs who have lost money in a multi-level marketing program to automatically obtain class certification by making the simple allegation that the program was in actuality an illegal pyramid scheme. In so doing, it minimizes the fact that many plaintiffs would be unable to show that defendants caused their injuries, and it allows the plaintiffs to skirt their burden of establishing “that the questions of law or fact common to class members predominate over any questions affecting only individual members.” Fed. R. Civ. P. 23(b)(3).
The Supreme Court has emphasized that for plaintiffs to satisfy the causation requirement of a civil RICO claim, there must be “some direct relation between the injury asserted and the injurious conduct alleged.” Bridge v. Phoenix Bond & Indent. Co., 553 U.S. 639, 654,128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008) (citation omitted). With over 200,000 plaintiffs in this case, there are numerous and disparate motivations behind each plaintiffs decision to participate in Ignite’s multilevel marketing program, many of which weaken or sever any chain of causation.
For example, some of the plaintiffs could -have been fully aware of the questions surrounding Ignite’s legality, but nevertheless decided to participate for the simple reason of making a profit. For these plaintiffs, there would be no “direct relation” between the funds lost and Ignite’s actions; the cause of any losses incurred would be based on the plaintiffs’ own informed decision to take on a calculated risk that ultimately did not pay off. In other words, these plaintiffs’ own assumption of risk “would constitute an intervening cause breaking the chain of causation between” Ignite’s actions and these plaintiffs’ injuries. Id. at 658, 128 S.Ct. 2131. By affirming the certification of a class that includes this subset of plaintiffs, the majority opinion provides a potential bailout for those who knowingly gambled and lost.
Other plaintiffs could have joined Ignite’s program for the sole purpose of selling (or learning the business of selling) energy, which, as Judge Jones’s dissenting opinion points out, is an aspect of the *655 business that is indisputably legal. For these plaintiffs, Ignite’s structure as a purported pyramid scheme could not have caused their injury, as any losses would be directly related only to an “independent[ ] factor[ ].” Id. at 654, 128 S.Ct. 2131 (citation omitted). Specifically, their losses would have been caused by their own inability to sell the energy necessary in order to turn a profit.
Other plaintiffs may have joined Ignite solely to take advantage of Ignite’s training courses or networking opportunities, while others could have participated without any intention of making a profit in order to help out a friend or family member who was already a part of the program. For these plaintiffs, it would be impossible for Ignite to have caused any alleged injury, because no injury exists: these plaintiffs obtained exactly what they were hoping to receive by participating in Ignite’s program. By affirming the certification of a class that includes these plaintiffs, the majority opinion allows those who have already received the benefit of their bargain with Ignite to potentially recoup the fees paid and effectively receive Ignite’s products and services for free. In so doing, the majority opinion undermines one of the purposes of RICO causation, which the Supreme Court has stated is “to obviate the risk of multiple recoveries.” Id. (citation omitted).
Plaintiffs could have participated in the program as “a form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores of other things.” Poulos v. Caesars Would, Inc., 379 F.3d 654, 668 (9th Cir. 2004) (concluding that class certification was inappropriate in a civil RICO case because the various motivations for gambling precluded common issues from predominating over individual ones). Each plaintiff had subjective and individualized reasons for joining Ignite’s multi-level marketing program. As the parties seeking class certification, plaintiffs had the burden to show that—despite each plaintiffs differing motivations and expectations— common questions “predominate over any questions affecting only individual members.” Fed. R. Civ. P. 23(b)(3); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). This they failed to do. I respectfully dissent.