NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 8 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PLAINTIFFS' CONSUMER CLASS,<br><br>　　　　Plaintiff - Appellee,<br><br>RUTH RUBIN,<br><br>　　　　Objector - Appellant,<br><br>　v.<br><br>HYUNDAI MOTOR COMPANY; KIA CORPORATION,<br><br>　　　　Defendants - Appellees. | No. 24-7185<br><br>D.C. No.<br>8:22-ml-03052-JVS-KES<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted November 19, 2025
Pasadena, California

Before: WARDLAW, BERZON, and MILLER, Circuit Judges.

Objector-appellant Ruth Rubin appeals from the district court's order

granting final approval of a class action settlement concerning allegations that

---

[*]　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

certain Hyundai and Kia vehicles were defectively designed and thus vulnerable to theft. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

A class action settlement must be fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). We review the district court's approval of a pre-certification settlement for "clear abuse of discretion." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). "[T]he district court must show it has explored comprehensively all [Rule 23(e)(2)] factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). The possibility that a settlement could have yielded greater benefits for the class does not mean that it cannot survive scrutiny under Rule 23(e)(2). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

1. Rubin argues that the settlement fails to treat class members equitably. Focusing on class members who did not experience a qualifying theft or theft attempt (the "non-theft subclass"), she argues that those members receive "close to nothing" under the settlement, while those who experienced a qualifying theft or

theft attempt receive valuable consideration. Rubin also contends that the settlement provides no value to the non-theft subclass beyond the remedies that Hyundai and Kia were already offering outside this litigation and before the settlement was proposed.

Contrary to Rubin's argument, all class members, including those in the non-theft subclass, are eligible to receive an effective remedy for the alleged defect that will reduce the risk of theft. Most class members are eligible for a free software upgrade, to be installed at a Kia or Hyundai dealership, which defendants warrant for the life of the vehicle. The upgrade's reliability and effectiveness at deterring theft have been confirmed through testing by an outside expert. Class members who are eligible for the software upgrade can also seek reimbursement for lost income and up to $250 in childcare expenses incurred to obtain the software upgrade. They are also eligible to be reimbursed for the purchase of up to two new key fobs, up to $350 per fob, where necessary to implement the upgrade. Before the settlement, defendants were not offering reimbursements for lost income, childcare expenses, or key fobs. Class members whose car models are ineligible to receive the software upgrade can instead seek up to $300 in reimbursement for the purchase of anti-theft systems, such as a steering wheel lock or glass breakage alarm.

The settlement is not inequitable simply because class members who experienced a qualifying theft or theft attempt are entitled to greater remedies than those who did not. Nothing in Rule 23 prohibits parties from tying distribution of settlement funds to class members' actual harm, and it is equitable to provide greater compensation to the theft subclass because its members suffered greater harm than the non-theft subclass. The district court did not abuse its discretion in determining that the settlement's remedies adequately and equitably compensate members of the non-theft subclass.

2. Rubin argues that the settlement inadequately compensates the non-theft subclass because it does not compensate its members for increases in car-insurance premiums. The district court did not abuse its discretion when it determined that there was insufficient evidence from which it could conclude that defendants' theft-prone design caused insurance premiums to rise on class vehicles. The court identified flaws in Rubin's expert report that undermined the report's reliability, and it correctly found that the report did not rebut evidence in the record that premiums rose a comparable amount during the relevant period for *all* vehicles, not just class vehicles. Because premiums reflect the combined effect of many factors, the district court acted within its discretion when it concluded that Rubin's evidence did not reliably quantify any premium increase attributable to the alleged defect.

24-7185

3. Rubin also argues that the settlement fails to provide adequate compensation for the non-theft subclass because it provides no compensation for decreases in the market value of vehicles. Although the district court ordered supplemental briefing on this issue, Rubin submitted no evidence that the market values of class vehicles declined due to the alleged defect. Contrary to Rubin's arguments, the district court did not apply a heightened burden of proof but rather correctly found that the record did not support diminution-in-value damages. Class counsel explained that they investigated possible diminutions in value and found that the resale value of many models had actually increased during the relevant period. Defendants likewise submitted third-party resale data showing that other makes and models had lost more value than class vehicles. On the record before it, the district court did not abuse its discretion in determining that diminution-in-value damages were too speculative to award on a class-wide basis.

4. Finally, Rubin argues that the district court's approval of the settlement was premature because the court's analysis was insufficient and the parties did not engage in adequate discovery. But the district court's independent review of the settlement agreement was thorough and diligent, spanning 15 months, multiple hearings, and several rounds of briefing. Formal discovery is not required before class-action parties can "make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

**AFFIRMED.**