# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3909

_____

In re: Target Corporation Customer Data Security Breach Litigation

------------------------------

Jim Sciaroni

*Objector - Appellant*

v.

Consumer *Plaintiff*s

*Plaintiff - Appellee*

Target Corporation

*Defendant - Appellee*

_____

No. 15-3912

_____

In re: Target Corporation Customer Data Security Breach Litigation

------------------------------

Leif A. Olson

*Objector - Appellant*

v.

Consumer *Plaintiff*s

*Plaintiff - Appellee*

Target Corporation

*Defendant - Appellee*

_____

No. 16-1203

_____

In re: Target Corporation Customer Data Security Breach Litigation

------------------------------

Leif A. Olson

*Objector - Appellant*

v.

Consumer *Plaintiff*s

*Plaintiff - Appellee*

Target Corporation

*Defendant - Appellee*

_____

No. 16-1245

_____

In re: Target Corporation Customer Data Security Breach Litigation

------------------------------

Jim Sciaroni

*Objector - Appellant*

v.

Consumer *Plaintiff*s

*Plaintiff - Appellee*

Target Corporation

*Defendant - Appellee*

_____

No. 16-1408

_____

In re: Target Corporation Customer Data Security Breach Litigation

------------------------------

Leif A. Olson

*Objector - Appellant*

v.

Consumer *Plaintiff*s

*Plaintiff - Appellee*

Target Corporation

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

Submitted: November 16, 2016
Filed: February 1, 2017
[Published]

_____

Before BENTON and SHEPHERD, Circuit Judges, and STRAND, District Judge.[1]

_____

SHEPHERD, Circuit Judge.

This is a consolidated appeal from various district court orders in a lengthy and multifarious class action lawsuit against Target Corporation. Class member Leif Olson challenges the class certification for lack of adequate representation due to an alleged intraclass conflict. Class member Jim Sciaroni does not object to the certification but appeals the district court's approval of the settlement agreement. Together, Olson and Sciaroni also challenge the district court's order requiring them to post a bond of $49,156 to cover the costs of this appeal. For the reasons discussed below, we remand for further consideration of the class certification consistent with this opinion. We also reverse the order of the district court setting the amount of the appeal bond and remand with instructions to the district court to reduce the bond in accordance with the rule set forth below. We retain jurisdiction over this case and, to the extent necessary, will consider any remaining issues following the district court's disposition on remand.

## I. Background

In 2013, Target announced a security breach by third-party intruders that compromised the payment card data and personal information of up to 110 million Target customers. Some months later, 112 consumer representatives initiated a class

_____

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, sitting by designation.

action lawsuit against Target in the U.S. District Court for the District of Minnesota. The parties eventually agreed to settle. Upon request from the consumer-plaintiffs, the district court preliminarily certified a settlement class defined as "[a]ll persons in the United States whose credit or debit card information and/or whose personal information was compromised as a result of the [Target] data breach." The court also preliminarily approved the parties' proposed settlement agreement, which calls for Target to create a $10 million settlement fund for the class. Under the agreement, class members with documented losses are compensated from the fund first, and the remaining balance is distributed equally among class members with undocumented losses. Class members who suffered no loss from the security breach receive nothing from the settlement fund. The agreement also allows class counsel to request fees of up to $6.75 million, which Target must pay in addition to the $10 million fund. Finally, the settlement requires Target to commit to specific improvements in its data security practices, such as appointing a chief information security officer, developing safeguards to control identifiable security risks, and providing security training to employees.

Between the district court's preliminary and final orders certifying the class and approving the settlement, class members Leif Olson and Jim Sciaroni each objected to the settlement, alleging inadequate compensation and excessive attorneys' fees. Additionally, Olson argued that the class could not be certified because it failed to meet the basic prerequisites of Federal Rule of Civil Procedure 23(a). Olson alleged that, unlike the class representatives, he incurred no expenses or costs making him eligible for compensation from the settlement fund. App. 309-10. Despite receiving no pecuniary relief, as a class member Olson is bound under the settlement to release Target from liability for any claims he may someday have should the breach injure him in the future. According to Olson, class members who are, like himself, ineligible for monetary compensation make up what he terms a "zero-recovery subclass." Olson argued that no named plaintiff belongs to this purported subclass,

App. 309, and therefore the court should certify a separate subclass with independent representation.

The district court overruled Olson's objection and issued final certification and approval of the settlement.[2]  When this appeal was filed, the district court imposed a $49,156 appeal bond, which Olson's counsel posted in full.

## II.  Discussion

### A. Class Certification

We review a district court's decision to certify a class for abuse of discretion. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1145 (8th Cir. 1999).  Olson argues that, in its preliminary certification order, the district court did not properly analyze Rule 23(a) before concluding that the consumer-plaintiffs adequately represent the class. According to Olson, the court's summary application of Rule 23(a) during preliminary certification, as well as its refusal to revisit the issue upon final certification, are independent grounds for remand.  We agree.

A district court may not certify a class until it "is satisfied, after a rigorous analysis," that Rule 23(a)'s certification prerequisites are met.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted).  Consistent with the Supreme Court's premise that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable," Falcon, 457 U.S. at 160, after initial certification, the duty remains

---

[2]In doing so, the court also overruled Olson's and Sciaroni's objections to the settlement agreement, describing the agreement as a "significant victory" for the class.  Sciaroni alone appeals this ruling.  Because we agree with Olson that the district court did not conduct a proper certification analysis, we do not reach Sciaroni's challenge to the settlement.

with the district court to assure that the class continues to be certifiable throughout the litigation, Petrovic, 200 F.3d at 1145. See also Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1214 (6th Cir. 1997) ("The district court's duty to assay whether the named plaintiffs are adequately representing the broader class does not end with the initial certification . . . ."). Where, as here, adequacy of class representation is at issue, "close scrutiny" in the district court is even more important given the need to protect the due process rights of absent class members. See Rattray v. Woodbury Cnty., 614 F.3d 831, 835 (8th Cir. 2010).

Though the Supreme Court has not articulated what, specifically, a "rigorous analysis" of class certification prerequisites entails, at a minimum the rule requires a district court to state its reasons for certification in terms specific enough for meaningful appellate review. "[S]omething more than mere repetition of [Rule 23(a)'s] language [is required]; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich., 654 F.3d 618, 629 (6th Cir. 2011) (internal quotation marks omitted) (alteration omitted); accord Vizena v. Union Pac. R.R. Co., 360 F.3d 496, 503 (5th Cir. 2004) (per curiam) ("[W]hen certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23.").

The district court's certification of the settlement class does not meet this standard. In its preliminary order, the court replaces analysis of the certification prerequisites with a recitation of Rule 23 and a conclusion that certification is proper. Regarding Rule 23(a)(4)'s representation adequacy requirement—the issue at the heart of Olson's appeal—the court states: "the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interest antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class." These

-4-

remarks are conclusions, not reasons, and on their own they do not constitute a "rigorous analysis" of whether certification is proper in this case. See Stirman v. Exxon Corp., 280 F.3d 554, 563 (5th Cir. 2002) (conclusory statement that "no conflicts exist to preclude certification" does not sufficiently analyze representation adequacy).

To be sure, there were no objections at the time the court entered its preliminary order, and thus the class was initially certified without the benefit of adversarial briefing on the issue. But Olson objected before final certification, alleging an intraclass conflict that, if substantiated, would preclude certification of a single class and warrant inquiry into certification of an independent subclass.[3] See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997); Fed. R. Civ. P. 23(c)(5). Despite its continuous duty to evaluate certification throughout the litigation, Petrovic, 200 F.3d at 1145, the court dismissed Olson's arguments, refusing to reconsider whether certification is proper solely because it had already preliminarily certified the class. The final order states:

> Olson argues that the settlement class cannot be certified because class members who have not experienced a concrete injury have an irreconcilable conflict will [sic] class members who did suffer a tangible injury. *But the Court certified a settlement class in the preliminary approval order, and will not revisit that determination here.*

Addendum 22 (emphasis added).

---

[3]In the district court, Olson also argued that the settlement did not satisfy Rule 23's superiority or predominance requirements, the settlement terms were unfair on account of self-dealing by class counsel, and the attorneys' fee provision was unreasonable. Though the court rejected all of these arguments, Olson appeals only the district court's ruling on certification.

The lack of legal analysis in both the preliminary and final orders suggests that class certification was the product of summary conclusion rather than rigor. We hold that the district court abused its discretion by failing to rigorously analyze the propriety of certification, especially once new arguments challenging the adequacy of representation were raised after preliminary certification. See Falcon, 457 U.S. at 160. Accordingly, we remand for the court to conduct and articulate a rigorous analysis of Rule 23(a)'s certification prerequisites as applied to this case. A sufficient analysis will clearly inquire into whether the named representatives (1) "have common interests with the members of the class[;]" and (2) "will vigorously prosecute the interests of the class through qualified counsel." E.g., Paxton v. Union Nat'l Bank, 688 F.2d 552, 562-63 (8th Cir. 1982). In assessing these factors, the court must diligently aim to "uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625; see also Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.").

Though not exhaustive, Olson's objection raises important concerns for the district court to evaluate upon remand. First, whether an intraclass conflict exists when class members who cannot claim money from a settlement fund are represented by class members who can. Second, if there is a conflict, whether it prevents the class representatives "from fairly and adequately protecting the interests of all of the class members." Petrovic, 200 F.3d at 1145. Third, if the class is conflicted, whether the conflict is "fundamental" and requires certification of one or more subclasses with independent representation. See In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249-50 (2d Cir. 2011) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 816 (1999)); see also Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski, 678 F.3d 640, 648 (8th Cir. 2012) ("Given the nature of this case and the potential conflict at issue, the district court did not abuse its discretion in certifying

-6-

the class or by ensuring fair and adequate representation for the entire class by means other than appointing separate counsel for each subclass.").

To be clear, we take no position on the propriety of class certification. We only conclude at this point that the record is inadequate for our review because the district court has not conducted a meaningful analysis of class certification.

## B. Appeal Bond

We next address the district court's imposition of a $49,156 appeal bond under Rule 7 of the Federal Rules of Appellate Procedure. The parties agree that only $2,284 of the bond reflects the direct costs of this appeal. The remaining $46,872, according to the district court, is included in the bond to cover "the financial harm the class will suffer as a result of the delay caused by the appeal," such as disruptions in the claims process, hindered distribution of settlement funds to class members, and the administrative costs of maintaining the settlement website and toll-free telephone number. Appellants argue that these delay costs cannot be included in the bond because no applicable statute or federal rule allows Appellees to recover those costs if Appellants lose their appeal.[4] Appellees disagree, citing a myriad of district court

---

[4]Olson also argues that the district court erred in holding him jointly and severally liable with Appellant Sciaroni for the appeal bond. He provides no controlling authority for this assertion but cites cases from other circuits that are inapplicable to the context at hand. See Hessel v. O'Hearn, 977 F.2d 299, 305 (7th Cir. 1992) (search and seizure); Hous. Contractors Ass'n v. Metro. Transit Auth. of Harris Cnty., 993 F. Supp. 545, 558 (S.D. Tex. 1997) (equal protection). We therefore decline to overturn the district court's imposition of joint and several liability for the appeal bond.

Additionally, we recognize that, in light of our decision to remand this case to the district court for reconsideration of class certification, Appellant Olson has prevailed on his appeal. While there is some authority suggesting that this ordinarily moots a challenge to a bond, see Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041,

opinions and one Third Circuit opinion—all unpublished—allowing Rule 7 appeal bonds to include delay-based administrative costs.

The issue is one of first impression in our Court: whether costs associated with delays in administering a class action settlement for the length of a class member's appeal may be included in an appeal bond under Federal Rule of Appellate Procedure 7. While we ordinarily review the imposition of a Rule 7 bond for abuse of discretion, the determination of costs allowable in the bond is a legal question reviewed de novo. Adsani v. Miller, 139 F.3d 67, 71 (2d Cir. 1998); see also Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp., 497 F.3d 805, 808 (8th Cir. 2007) (reviewing de novo the interpretation of federal appellate rules).

Rule 7 allows a district court to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Appeal bonds are a type of guarantee for an appellee that an unsuccessful appellant can pay the costs the appellee incurs as a result of the appeal. Tennille v. W. Union Co., 774 F.3d 1249, 1254 (10th Cir. 2014). Appellate courts generally limit "costs on appeal" to "costs that a successful appellate litigant can recover pursuant to a specific rule or statute." Id.; see also Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 953 (9th Cir. 2007) (allowing attorneys' fees in a Rule 7 bond only when they are included as recoverable costs under an applicable fee-shifting statute); Pedraza v. United Guar. Corp., 313 F.3d 1323, 1333 (11th Cir. 2002) (same); In re Am. President Lines, Inc., 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam) (limiting "costs on appeal" under Rule 7 to "those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39"). The Sixth

---

1057 (7th Cir. 1998), we need not address mootness in this case because our decision today does not terminate this appeal. Rather, we retain jurisdiction in order to address any issues remaining following remand, such as those raised by Sciaroni, which we set aside until the more fundamental issue of class certification is properly determined.

Circuit, for example, upheld the inclusion of delay-based administrative costs in an appeal bond in part because the applicable state law provided for the prevailing party on appeal to recover "*any damages incurred*, including reasonable attorney's fees and costs." In re Cardizem CD Antitrust Litig., 391 F.3d 812, 817-18 (6th Cir. 2004) (emphasis added). By the same logic, the Tenth Circuit reversed an appeal bond that included delay costs, as no rule or statute applied allowing for their recovery. Tennille, 774 F.3d at 1255.

We find our sister circuits' approach sensible and fair. By linking the amount of the bond to the amount the appellee stands to have reimbursed, the rule secures the compensation due to successful appellees while avoiding creating "an impermissible barrier to appeal" through overly burdensome bonds. See Adsani, 139 F.3d at 76. Accordingly, we hold that "costs on appeal" for Rule 7 purposes include only those costs that the prevailing appellate litigant can recover under a specific rule or statute applicable to the case at hand. This approach is consistent with our recent ruling in In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation, 716 F.3d 1057, 1062 (8th Cir. 2013). In Uponor, the district court ordered class members appealing a settlement agreement to post a $170,000 Rule 7 bond comprised of $25,000 in direct appeal costs and the rest reflecting the expected administrative delays caused by the appeal. No.11-MD-2247, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012). On appeal, the class members argued that the bond was excessive because, among other reasons, it improperly included delay-based administrative costs. We agreed, "staying the requirement that Appellants post an appeal bond in excess of [the] $25,000 [in direct appeal costs]." Uponor, 716 F.3d at 1062 (internal quotation marks omitted). Though we did not directly address the question this case presents (as the parties did not pursue the matter following our stay), our reduction of the bond in Uponor to reflect only the direct appeal costs suggests that the more tenuous costs of administration are properly excluded in an appeal bond.

In light of our holding, we reverse and remand for the district court to reduce the Rule 7 bond to reflect only those costs that Appellees will recover should they succeed in any issues remaining on appeal following the district court's reconsideration of class certification.

## III. Conclusion

The record provides an inadequate basis for effective appellate review because the district court failed to articulate its analysis of the numerous disputed issues of law and fact regarding the propriety of class certification. We accordingly remand this case to the district court with instructions to conduct and articulate a rigorous analysis of Rule 23(a)'s certification prerequisites as applied to this case, which must expressly evaluate the arguments raised in Olson's objection.[5] We also reverse the order of the district court as to the amount of the Rule 7 appeal bond and remand for recalculation consistent with this opinion. This panel retains jurisdiction over any remaining issues following the district court's disposition on remand. See 28 U.S.C. § 2106 (granting appellate courts the power to "require such further proceedings to be had as may be just under the circumstances"). Within 120 days, the district court shall certify to this Court its findings and conclusions supporting its reconsideration of class certification.

---

[5]Appellant Olson's request for reassignment upon remand is denied. See Liteky v. United States, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.").