# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2750

———————

| | | |
|---|---|---|
| Elizabeth M., et al., on behalf of themselves and on behalf of others similarly situated, | * * * * | |
| Plaintiffs - Appellees, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Nebraska. |
| Nancy Montenez, et al., | * * | |
| Defendants - Appellants. | * | |

———————

Submitted: February 15, 2006
Filed: August 15, 2006

———————

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

This is a putative class action filed by sixteen present and former female patients at Nebraska's three residential mental health facilities -- the Lincoln Regional Center (LRC), the Norfolk Regional Center (NRC), and the Hastings Regional Center (HRC). Plaintiffs seek declaratory and injunctive relief against the Director of the Nebraska Department of Health and Human Services and the Chief Executive Officers and the Clinical Directors of the three facilities, all sued in their official capacities. The complaint alleges that these seven defendants are violating plaintiffs' federal constitutional and statutory rights by failing to protect them from sexual and physical

assaults by male patients and staff, and by failing to adequately treat their mental illnesses and developmental disabilities. The district court certified a single class for these disparate claims:

> All women who were subjected to rape, sexual assault, sexual harassment, sexual exploitation, and physical assault, while in the care and custody of Nebraska Health and Human Services System (NHHSS) as residents at one or more of the NHHSS residential mental health facilities; and all women who are currently, or in the future will be, in the care and custody of the NHHSS and placed as residents at one or more of the NHHSS residential mental health facilities.

We agreed to review defendants' interlocutory appeal of this order under Rule 23(f) of the Federal Rules of Civil Procedure. See generally Prado-Steiman v. Bush, 221 F.3d 1266, 1271-77 (11th Cir. 2000). We conclude plaintiffs failed to satisfy the requirements of Article III and Rule 23, and the district court abused its discretion in presuming these requirements were satisfied. See In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436 (8th Cir. 1999), cert. denied, 529 U.S. 1038 (2000) (standard of review). We therefore vacate the class certification order.

# I.

The named plaintiffs are women who are or were involuntarily confined at LRC, NRC, and/or HRC. One plaintiff, Caroline C., was the named plaintiff in a prior class action alleging failure to protect patients at HRC from assaults by male patients. The district court certified a class consisting of all women who had been sexually assaulted or raped by male patients at HRC plus all current and future residents of that facility. Caroline C. v. Johnson, 174 F.R.D. 452 (D. Neb. 1996). The court subsequently approved a consent decree that went far beyond patient safety issues, committing state officials to detailed provisions mandating "the development and implementation of appropriate mental health treatment for class members." Caroline

C. v. Johnson, Case No. 4:CV95-22 (D. Neb. Oct. 29, 1998). That decree expired by its own terms on December 31, 2000. In this action, plaintiffs expanded their causes of action to include both safety and treatment claims and broadened the purported class to include women at all three regional facilities. Plaintiffs urged the district court to exercise jurisdiction under the expired Caroline C. consent decree, but the court denied the request. That ruling is not before us.

Ten plaintiffs allege they were sexually assaulted by facility employees, nine by the same staff member at LRC and one by a different staff member at NRC. One plaintiff alleges she was sexually harassed by a staff member at NRC. Five plaintiffs allege they were sexually assaulted by male residents at LRC and NRC. Five plaintiffs allege they were denied adequate mental health trauma treatment at one or more of the facilities. Three plaintiffs allege they were denied adequate trauma treatment after discharge. All plaintiffs allege that defendants failed to provide:

> appropriate and effective nursing care, medical care, academic instruction, occupational therapy, social, and independent living skills training, recreational therapy, vocational training and rehabilitative, psychological testing, psychiatric care, individualized training, meaningful physical education, discharge planning and the provision for a system of community-based mental health residential facilities designed to meet the individual needs of Plaintiffs.

Plaintiffs allege violations of their rights under "the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution," Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.[1]

---

[1]Title II and § 504 prohibit public entities from denying qualified individuals with services and programs on account of their disabilities. Though § 504 is limited to state and local programs receiving federal assistance, the statutes are "similar in substance." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

Plaintiffs' class action complaint requests sweeping injunctive relief which, if granted, would require the district court to mandate and monitor detailed programs governing nearly every facet of the State's operation of the three residential facilities -- patient risk assessment, placement, and discipline; staff leadership structure; prehire procedures and training for staff; sex education and sexual expression policies; creation of "all women safe units" and a "Woman's Council" selected by class members at each facility; a "trauma treatment model" that includes "biological (medications), psychological, [and] psychosocial" components; and programs for "mental health treatment and rehabilitation consistent with the individual needs" of each class member. The complaint also seeks a declaratory judgment that defendants have violated plaintiffs' constitutional and statutory rights.

## II.

By certifying a single class action to litigate this broad array of claims and prayers for relief, the district court has essentially conferred upon itself jurisdiction to assert control over the operation of three distinct mental health facilities, a major component of Nebraska state government. A federal court may not lightly assume this power. "Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." Rizzo v. Goode, 423 U.S. 362, 378 (1976) (quotation omitted); see Angela R. v. Clinton, 999 F.2d 320, 326 (8th Cir. 1993) ("Federal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies."). Moreover, as the sweeping consent decree in Caroline C. illustrates, this concern is heightened in the class action context because of the likelihood that an order granting class certification "may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." Advisory Committee Notes to 1998 Amendments adopting Rule 23(f). Consequently, before certifying a class seeking broad injunctive relief against a state agency, a

district court must ensure that it has Article III jurisdiction to entertain each claim asserted by the named plaintiffs. See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 n.6 (5th Cir. 2002); Prado-Steiman, 221 F.3d at 1279-80. And the court must conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 are satisfied. Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982).

## III.

Plaintiffs' complaint seeks only equitable relief because Nebraska's Eleventh Amendment immunity would bar damage claims in federal court against these defendants acting in their official capacities. See Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought. James v. City of Dallas, 254 F.3d 551, 563 (5th Cir. 2001), cert. denied, 534 U.S. 113 (2002). "Past exposure to illegal conduct" is not enough absent present adverse effects. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quotation omitted); see Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 108-09 (1998). For this reason, a claim for equitable relief altering the custodial conditions at a state institution normally becomes moot when the plaintiff is no longer subject to the challenged conditions. See Inmates of Lincoln Intake & Detention Facility v. Boosalis, 705 F.2d 1021, 1023-24 (8th Cir. 1983). Therefore, defendants argue, former patients who allege they were victims of assaults or inadequate treatment in the past are not proper members of the class. On this record, we agree.

When the district court certified the class, fourteen of the sixteen named plaintiffs no longer resided at any of the three facilities. Nearly all the relief sought in the complaint addresses future conditions *within* the facilities. These fourteen plaintiffs, like other class members who no longer reside at the facilities, are not likely to suffer a future injury that will be remedied by this relief unless they are recommitted to one of the facilities, in which case they would enjoy the benefits of

any injunctive relief that may be granted as members of the class of *future* residents. Moreover, the presence of former residents in the class poses a substantial risk to the "efficiency and economy of litigation which is a principal purpose" behind the class action device. Gen. Tel. Co., 457 U.S. at 159. Adjudication of their claims for a declaratory judgment that prior assaults violated their rights is not necessary to the claims for injunctive relief but threatens to violate the State's Eleventh Amendment immunity from damage claims. In these circumstances, the district court abused its discretion by including present and former residents in a single, essentially unmanageable class.[2]

The former residents also claim constitutional and statutory rights to adequate mental health treatment *after* their discharge from defendants' facilities. As to this claim, they obviously have a present interest sufficient to confer standing to seek injunctive relief. But the claim of a federal constitutional right to non-custodial mental health treatment is highly dubious and has little in common with the constitutional claims of present residents. See DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 199-201 (1989). Any claim for post-discharge relief under state law would be barred by the State's Eleventh Amendment immunity. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984). Thus, the former residents' right to class-wide post-discharge relief turns on their claims to a right to such treatment under Title II of the ADA or § 504 of the Rehabilitation Act. Their complaint and class certification motion papers were silent as to the specific statutory or regulatory basis for these claims. In these circumstances, the district court abused its discretion (i) in combining former residents' claims for post-discharge relief with

---

[2]We reject plaintiffs' contention that this is a case where a named plaintiff may represent the class despite the loss of a personal stake in the relief sought because the claim is "capable of repetition, yet evading review." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 398 (1980). As the remaining two named plaintiffs illustrate, long-term residents with a present stake in the relief sought are available to better represent the class of present and future residents.

present residents' disparate claims into a single, unmanageable class action, and (ii) in ruling without discussion that the named plaintiffs who are former residents sustained their burden of demonstrating that all Rule 23 requirements are satisfied for the certification of a separate class for post-discharge claims.

**IV.**

When the class was certified, Caroline C. and Susan Z. were the only named plaintiffs residing in one of the three mental health facilities and therefore eligible to represent a class of present and future residents seeking equitable relief to improve conditions within the facilities. See East Texas Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403 (1977) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). Our remaining task is to determine whether these two named plaintiffs satisfy all the requirements of Rule 23(a) and Rule 23(b)(2) with respect to the causes of action asserted. Rule 23(a) provides that no class action may be certified unless the court determines:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If the requirements of Rule 23(a) are met, Rule 23(b)(2) provides that a non-opt-out class may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[3]

---

[3]The district court erred in also certifying the non-opt-out class under Rule 23(b)(1)(B) without considering the impact that adjudication of the broad prayer for declaratory relief might have on class members' damage claims for sexual and

The Failure To Protect Claims. The complaint alleges that Caroline C. was sexually assaulted by a male resident of LRC, that defendants were aware such conduct was occurring but took no corrective actions, and that this failure to protect was part of "a pattern or series of incidents of unconstitutional conduct." Susan Z., the other resident named plaintiff, does not allege an assault claim.

When a person is involuntarily confined in a state mental health facility, the State has a duty imposed by the Substantive Due Process Clause of the Fourteenth Amendment to provide a "reasonably safe environment." Beck v. Wilson, 377 F.3d 884, 890 (8th Cir. 2004). To recover under § 1983 for a breach of that constitutional duty, a plaintiff must prove that a state official either intentionally violated the duty (such as criminal assault by a staff member) or was deliberately indifferent to a known excessive risk to patient safety (such as assault by another patient). See Revels v. Vincenz, 382 F.3d 870, 874-75 (8th Cir. 2004). In addition, when the claim is, as here, against the institution's supervisors for inadequate safety policies, plaintiff must prove (i) that an employee violated her due process right to safety, (ii) that institutional policies led to the violation, and (iii) that the policies were adopted with deliberate indifference to their known or obvious consequences. See Pietrafeso v. Lawrence County, No. 05-1038, slip op. at 6-7 (8th Cir. Jul. 11, 2006), applying Board of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997).

Though class certification is not the time to address the merits of the parties' claims and defenses, the "rigorous analysis" under Rule 23 must involve consideration of what the parties must prove. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622-23 & n.18 (1997); Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 & n.12 (1978). Here, that prompts the following Rule 23 concerns:

---

physical assaults. The Supreme Court has cautioned against "adventurous application of Rule 23(b)(1)(B)." Ortiz v. Fibreboard Corp., 527 U.S. 815, 845 (1999).

• Though plaintiffs' assault claims focus on the institutional policies defendants adopted in their official capacities, *each* assault claim initially requires proof that another employee of *one* residential facility violated that class member's substantive due process right to safety. The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry. See Parke v. First Reliance Stnd. Life Ins. Co., 368 F.3d 999, 1004-05 (8th Cir. 2004). A substantive due process claim invariably "demands an exact analysis of circumstances before any abuse of power is condemned." County of Sacremento v. Lewis, 523 U.S. 833, 850 (1998). Given these individualized issues, why is Caroline C.'s assault claim typical of other class members' claims?

• The alleged assault of Caroline C. occurred at LRC. No named plaintiff who is currently a resident alleged a failure to protect claim arising at NRC or HRC. There can be no failure-to-protect liability at NRC or HRC unless a non-defendant employee at that facility violated patient safety rights. Thus, present and future patients at NRC and HRC may not be members of this failure-to-protect class.

• The proof needed to establish an essential predicate to the substantive due process claim against the supervisory defendants -- unconstitutional conduct by a non-defendant employee -- will differ greatly if the claim is failure to protect from intentional staff member assault as opposed to assault by a fellow resident, which requires proof of deliberate indifference to that risk by on-site staff. The former are not typical of the latter. See Jones v. Takaki, 38 F.3d 321, 323-24 (7th Cir. 1994).[4]

---

[4]We do not mean to suggest that institutional failure-to-protect claims are never suitable for resolution by class action. Depending on the circumstances, a more focused claim on behalf of a more uniform class may well be appropriate for class certification. See Jensen v. Clarke, 94 F.3d 1191 (8th Cir. 1996) (random assignment of violent inmates to overcrowded prison cells).

The Inadequate Treatment Claims.  In addition to the failure-to-protect claims, the complaint alleges that defendants have violated class members' constitutional and statutory rights by failing "to provide appropriate essential services necessary for the treatment, habilitation, rehabilitation, and amelioration of the Plaintiffs' mental illnesses and/or developmental disabilities."  The complaint and class action motion papers did not identify one or more policies or practices common to all three facilities that caused these alleged violations.  Instead, plaintiffs pleaded a laundry list of desired policy changes, alleged that their injuries are caused by the absence of these policies, and asserted that Rule 23's requirements are satisfied because all class members live in facilities where the desired policies are absent.

Although the complaint alleged in detail the kinds of treatment plaintiffs demand, it only vaguely described the treatment that named plaintiffs Caroline C. and Susan Z. required but were denied, alleging that each woman was denied "adequate" or "appropriate" "mental health trauma treatment."  This dearth of detail, combined with a claim that puts in issue every facet of mental health treatment, makes it impossible to evaluate (i) whether the treatment needs and injuries of Caroline C. or Susan Z. are typical of other class members; (ii) what specific policies or practices violate plaintiffs' constitutional or statutory rights, causing redressable injuries, and why; and (iii) the extent to which the treatment claims are common to all three facilities.  As the Supreme Court said in reversing an improvidently broad class-wide injunction against the Arizona Department of Corrections:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

Lewis v. Casey, 518 U.S. 343, 349 (1996).  The district court abused its discretion in not conducting a rigorous analysis of these issues.

-10-

Moreover, combining the failure-to-protect claims and the right-to-custodial-treatment claims in a single class action raises additional Rule 23 issues because the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, but not a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement. See Youngberg v. Romeo, 457 U.S. 307, 316-19 (1982); Ass'n for Retarded Citizens of N.D. v. Sinner, 942 F.2d 1235, 1239-40 (8th Cir. 1991). Given these differing legal standards, the individualized nature of all substantive due process inquiries, and plaintiffs' failure to identify the specific policies under attack and the nature of their federal statutory claims, the massive class action certified neither promotes the efficiency and economy underlying class actions nor pays sufficient heed to the federalism and separation of powers principles emphasized in Rizzo v. Goode, Lewis v. Casey, and other cases.

The district court's Memorandum and Order dated May 11, 2005, is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

_____