# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3029

_____

Michael Postawko; Christopher Baker; Michael C. Jamerson

*Plaintiffs - Appellees*

v.

Missouri Department of Corrections; Corizon LLC; Trinidad Aguilera; John Williams; FNU Stamps; Thomas Pryor; FNU Proctor; FNU Hardman; FNU Davison; Paul Jones; FNU Stieferman; T. Bredeman; Julie Fipps; FNU Cofield; FNC Rucker; Jamie Campbell; Dawn Baker; Geeneen Wilhite; Adrienne Hardy; Bonnie Boley; Amanda Yates; Julie LNU; J. Doe; Anne Precythe, in her official capacity as Director of the Missouri Department of Corrections

*Defendants - Appellants*

------------------------------

The Arc of the United States; Center for Children's Law and Policy; Judge David L. Bazelon Center for Mental Health Law; Disability Rights Arkansas, Inc.; Human Rights First; Impact Fund; National Disability Rights Network; National Immigrant Justice Center; National Juvenile Defender Center; Missouri Protection & Advocacy Services; Lawyers' Committee for Civil Rights Under Law

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 27, 2018
Filed: December 6, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Michael Postawko, Christopher Baker, and Michael Jamerson sought class certification for their claims alleging that the Missouri Department of Corrections ("MDOC") and various related defendants violated the Eighth Amendment and Title II of the Americans with Disabilities Act ("ADA") by providing inadequate medical screening and care for chronic Hepatitis C ("HCV") viral infections. In particular, they claim the MDOC's policies expose the class to a substantial risk of serious harm. The district court[1] granted class certification. We granted the Defendants' Fed. R. Civ. P. 23(f) petition for interlocutory appeal of the grant of class certification, and now affirm.

## I.    Background

Postawko, Baker, and Jamerson (the Named Plaintiffs) are each incarcerated in the MDOC. They filed an action asserting that they received inadequate medical care for their HCV infections and sought class certification. The following facts were contained in the Plaintiffs' Second Amended Complaint. HCV is a viral infection that can cause liver damage and other extremely serious side effects. Those who contract HCV may suffer inflammation of the liver, known as hepatitis. In turn, those with hepatitis may suffer significantly impaired liver functioning. A decrease in liver

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

function may result in symptoms such as severe pain, fatigue, difficulty or pain with urination, and an increased risk of heart attacks.

HCV may be either acute or chronic. While some acute HCV infections are resolved naturally, others develop into chronic HCV. Individuals suffering from chronic HCV develop fibrosis of the liver, in which healthy liver tissue is replaced with scar tissue. Patients are said to suffer from cirrhosis when a significant portion of the liver has been converted into scar tissue. Cirrhosis is irreversible. Determining exactly when significant fibrosis amounts to cirrhosis is not always an easy task, complicating treatment. Cirrhosis often causes "painful complications, including arthritic pain throughout the body, kidney disease, jaundice, fluid retention with edema, internal bleeding, easy bruising, abdominal ascites, mental confusion, lymph disorders, widespread itching, and even more extreme fatigue." Some of these complications can cause death if left untreated.

At least half of all those who suffer from chronic HCV will develop either cirrhosis or liver cancer. Each day without treatment increases the risk that an HCV infection will either develop into a serious condition such as chronic liver disease, fibrosis, cirrhosis, or liver cancer, or cause death from liver failure. HCV causes the death of more American citizens than any other infectious disease.

In recent years, significant medical advancements have been made in the treatment of HCV, which gives rise to the Plaintiffs' case. While previous treatments demonstrated only low rates of success and often caused substantial side effects, new direct-acting antiviral drugs ("DAA drugs") are estimated to cure over 90% of patients who receive them as treatment. DAA drugs are also estimated to cause a 90% reduction in the risk of liver-related mortality. Those effects, however, may diminish if treatment is delayed. The medical standard of care put forward by organizations such as the Infectious Diseases Society of America and the American Association for

the Study of Liver Diseases now recommends that almost all persons with chronic HCV receive DAA drug treatment.[2]

To know whether or not treatment is required, patients must undergo reliable screening for liver fibrosis or cirrhosis. One method for determining the presence and degree of cirrhosis or fibrosis is the AST to Platelet Ratio Index, or APRI. The APRI is derived by analyzing a blood sample of the patient and determining the ratio of a particular enzyme to the number of platelets. While a high APRI score (above 2.0) reliably indicates the presence of cirrhosis or severe fibrosis, a low APRI does not provide conclusive evidence in the other direction; in fact, over half of all patients suffering from cirrhosis will not have an APRI score of 2.0. For this reason, the use of other methods (such as liver biopsies) may be required to reliably determine whether an individual is suffering from fibrosis or cirrhosis.

The rate of HCV infection among the population of the MDOC is estimated to be at least 10% to 15%. As a highly communicable disease, HCV often spreads among the incarcerated population. The MDOC has provided DAA medications to less than one-half of one percent of inmates in their custody with a known HCV infection.

Plaintiffs alleged that Defendants Precythe, MDOC, and Corizon, LLC have the following policies or customs:

(1) not providing DAA drug treatment to all inmates with chronic HCV;
(2) using an APRI score, which measures the progression of fibrosis or cirrhosis, to determine whether a person should be treated;

---

[2]In cases where a patient has a life expectancy that is confidently estimated to be less than 12 months and treatment of HCV cannot alter that prognosis, the standard of care recognizes that it is reasonable to refrain from treatment and focus on palliative care.

(3) relying exclusively on APRI score to determine the stage of fibrosis or cirrhosis; rather than using other more accurate methods of determining its progression through liver biopsies, FIB-4, or FibroScan; (4) failing to consider providing treatment to HCV-positive inmates unless they have an APRI score above 2.0 that persists for several months, even though more than half of persons with cirrhosis will not have an APRI score at or above 2.0, and they know that AST levels are transient; (5) disregarding independent diagnoses of cirrhosis or significant hepatitis fibrosis in making their treatment decisions; and (6) basing treatment decisions on cost, rather than on need for treatment.

Plaintiffs alleged that instead of receiving DAA treatment, inmates with HCV but who have an APRI score below 2.0 are given a blood draw every six months and potential counseling.

The Defendants in this case opposed class certification, arguing in part that the Plaintiffs had not submitted sufficient evidence in conjunction with their motion for certification to allow the district court to conduct the "rigorous analysis" that is required under Rule 23. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982) (explaining that district courts must engage in a "rigorous analysis" to determine whether the requirements of Rule 23 have been satisfied); see also Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (explaining that a party seeking class certification must "be prepared to prove" the requirements of Rule 23(a) and "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)"). In response, Plaintiffs attached evidence to their reply to the Defendants' opposition to class certification supporting their compliance with Rule 23's requirements. That evidence included multiple records indicating that inmates were denied DAA drug treatment exclusively due to their low APRI scores—even when a Plaintiff had received an independent diagnosis of cirrhosis. For example, one record stated, "Your APRI score is 0.562 and per protocol the APRI score needs to be greater than 2 to be considered for treatment." The district court granted the Defendants leave to file sur-replies to address the Plaintiffs' new evidence.

The district court granted certification of a class comprised of the following:

> All those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic HCV, as that term is defined medically, but who are not provided treatment with direct acting antiviral drugs.

The district court relied on evidence submitted by both the Plaintiffs and the Defendants to support its certification decision. For example, the court found that the size of the proposed class was likely to number at least 2,000 persons, relying on evidence from one of the Defendants' experts to determine how many of the roughly 5,000 inmates with HCV were likely to develop chronic HCV. The court found that evidence submitted by the Defendants bolstered Plaintiffs' typicality arguments by confirming the Named Plaintiffs' allegations that they were diagnosed with chronic HCV and had not received treatment with DAA drugs. After closely examining the evidence put forward by both sides regarding the existence of a class wide policy, the court concluded that the records submitted by the Plaintiffs showing that they were rejected for DAA treatment and the Defendants' own evidence referencing standardized "protocols" for the treatment of chronic HCV satisfied the requirement that Plaintiffs be able to show that the party opposing the class acted or refused to act on grounds applying generally to the class. See Fed. R. Civ. P. 23(b)(2).

Plaintiffs initially sought injunctions that would require Defendants to: (1) "formulate and implement an HCV treatment policy that meets the prevailing standard of care, including identifying persons with HCV"; (2) "treat members of the class with appropriate DAA drugs"; and (3) "provide members of the class an appropriate and accurate assessment of the level of fibrosis or cirrhosis they have, counseling on drug-drug interactions, and ongoing medical care for complications and symptoms of HCV." The district court modified the scope of those proposed injunctions, replacing the direction to "treat members of the class with appropriate DAA drugs" with a prohibition on "delaying or denying DAA drug treatment to class members for any

nonmedical reason," due to the court's recognition that DAA treatment might conflict with other medical indicators. Plaintiffs also seek a declaratory judgment that the Defendants' policy of withholding treatment with DAA drugs from inmates diagnosed with HCV violates the Eighth and Fourteenth Amendments and the ADA. We granted the Defendants' Rule 23(f) petition for interlocutory appeal of the district court's grant of class certification.

## II.    Discussion

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Blades v. Monsanto Co., 400 F.3d 562, 568-69 (8th Cir. 2005)). Plaintiffs carry the burden of showing that they have met those requirements. See Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013) (quoting Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)). District courts must engage in a "rigorous analysis" to determine whether the requirements of Rule 23 have been satisfied. Falcon, 457 U.S. at 161 (1982). We will "reverse a certification where there has been an abuse of discretion." Ebert v. Gen. Mills, Inc., 823 F.3d 472, 477 (8th Cir. 2016) (quoting Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015)). A district court abuses its discretion if it commits an error of law. Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 995 (8th Cir. 2016) (citing In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 616 (8th Cir. 2011)). "[T]he district court's factual findings underlying the certification ruling are reviewed under the 'clearly erroneous' standard." Ebert, 823 F.3d at 477 (quoting Blades, 400 F.3d at 566).

"[A] decision to certify a class is far from a conclusive judgment on the merits of the case." In re Zurn Pex Plumbing Prod. Liab. Litig., 644 F.3d at 613. For that reason, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at

the certification stage." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id. Our primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution. See In re Zurn Pex Plumbing Prod. Liab. Litig., 644 F.3d at 613 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n. 11 (1978)) (explaining that the "tentative" nature of inquiry on a motion for class certification means that a court "must determine only" if Rule 23's requirements have been met).

Before considering whether the district court abused its discretion in certifying the class, we address the Defendants' argument that the district court treated Rule 23 as a mere "pleading standard" by failing to require additional evidence in support of the Plaintiffs' allegations.[3] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard."). While the district court's order contained dicta stating that it believed the Defendants proposed an overly stringent evidentiary requirement, the court noted that it would consider the evidence produced by the parties. Postawko v. Missouri Dep't of Corr., No. 2:16-CV-04219-NKL, 2017 WL 3185155, at *5 (W.D. Mo. July 26, 2017) ("Nonetheless, the Plaintiffs did produce evidence and the Court therefore turns to that evidence."). The court's consideration of that evidence makes clear that it did not treat Rule 23's requirements as a mere "pleading standard." The evidence submitted by both parties was sufficient to permit the district court to conduct a "rigorous analysis" into whether or not class certification was appropriate. We therefore turn to the question of class certification.

---

[3]The Defendants also argue that the district court improperly relied on evidence attached to Plaintiffs' reply in support of class certification. Admitting the evidence in the Plaintiffs' reply and allowing the Defendants the opportunity to file a sur-reply was an appropriate exercise of discretion in a matter of case management left to the district court.

## A.    *Rule 23(a)*

Rule 23(a) requires plaintiffs to show that the class satisfies the requirements of "numerosity, commonality, typicality, and fair and adequate representation." Luiken, 705 F.3d at 372.  The Defendants challenge the district court's conclusion that the numerosity, commonality, and typicality requirements were satisfied.

The district court did not abuse its discretion in concluding that the numerosity requirement was satisfied.  Given the evidence before the district court on the number of people suffering from chronic HCV under the MDOC's care, the district court's finding that the class was likely to include at least 2,000 people was not clearly erroneous.   A class of that size would make "joinder of all members . . . impracticable."  Fed. R. Civ. P. 23(a)(1); see Paxton v. Union Nat. Bank, 688 F.2d 552, 559-60 (8th Cir. 1982).

Nor did the district court abuse its discretion in finding that the commonality requirement was satisfied.  To satisfy Rule 23(a)(2), plaintiffs must show their claims involve a common question or contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Sandusky Wellness Ctr., LLC, 821 F.3d at 998 (quoting Wal-Mart, 564 U.S. at 350); see also Ebert, 823 F.3d at 478 (quoting Wal-Mart, 564 U.S. at 359)).  The mere presence of one or more common questions is not enough; rather, the district court must examine "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  Yates v. Collier, 868 F.3d 354, 361 (5th Cir. 2017) (emphasis omitted in original) (quoting Wal-Mart, 564 U.S. at 350).

Here the district court ably identified common questions whose answers were "apt to drive the resolution of the litigation."  For example, the members of the proposed class must show the Defendants acted "with 'deliberate indifference to [an

inmate's] serious medical needs'" to succeed on their Eighth Amendment claim. Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  As the district court noted, "[A]ll class members share the common question of whether the Defendants' policy or custom of withholding treatment with DAA drugs from individuals who have been or will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need."  Answering that question will resolve an issue "central to the validity" of each of the class members' claims.[4]

The Defendants argue that the unique medical condition of each member of the class means that resolving their claims will require a "highly individualized" inquiry.  This misunderstands the nature of the class's claims.  Plaintiffs assert that the failure of the Defendants to screen properly for a life-threatening disease and provide appropriate treatment exposes all inmates suffering from chronic HCV to the *same* unconstitutional injury.  Cf. Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citations omitted) ("A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied access to medical care.").  While a putative class seeking damages for such claims might struggle to satisfy Rule 23(a)(2), a class certified under Rule 23(b)(2) seeking only injunctive and declaratory relief suffers no such difficulty.[5]  Here the physical symptoms eventually

---

[4]Plaintiffs' ADA claim clears the same hurdle.  As the district court stated, "[A]ll class members share the common mixed factual and legal question of whether Defendants use the alleged policies to discriminate against inmates in need of medical treatment based on their chronic HCV diagnoses."

[5]The Defendants' comparison to Wal-Mart supports, rather than weakens, Plaintiffs' claims.  In Wal-Mart, the plaintiffs' discrimination claims included damages and involved the exercise of discretion by different managers all over the country.  See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1048 (2016)

suffered by each class member may vary, but the question asked by each class member is susceptible to common resolution.  See Yates, 868 F.3d at 363 (affirming class certification even where no two class members had "the exact same risk," as the relevant policy was alleged to pose an unconstitutional risk of serious harm to *all* class members); Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014) (explaining that "although a presently existing risk may ultimately result in different future harm for different inmates . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm").

The typicality requirement was also satisfied.  Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff."  DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citing Paxton, 688 F.2d at 562).  "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citing Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977)).  The Defendants argue that the Named Plaintiffs' claims require individualized inquiries, such that their claims are not typical of the class.  This argument overlaps significantly with their arguments on commonality.  See Wal-Mart, 564 U.S. at 349 n.5 (quoting Falcon, 457 U.S. at 157-158 n.13) (explaining that the "commonality and typicality requirements of Rule 23(a) tend to merge").  We therefore reject the argument for similar reasons.  In this suit for

_____

(explaining that the plaintiffs in Wal-Mart "did not provide significant proof of a common policy of discrimination to which each employee was subject").  By contrast, here the Plaintiffs allege the existence of a single policy related to HCV treatment and APRI scores that involves no discretionary decision-making.  Cf. Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 797 (8th Cir. 2014), *aff'd and remanded*, 136 S. Ct. 1036 (2016) ("Unlike [in Wal-Mart], Tyson had a specific company policy . . . that applied to all class members.").

-11-

prospective injunctive and declaratory relief, the potential for minor "factual variations" does not undermine the district court's conclusion that the violation allegedly suffered by the Named Plaintiffs is typical of that suffered by the class as a whole. See DeBoer, 64 F.3d at 1174–75 (explaining that claims may be "typical of the remainder of the class given the nature of the injunctive relief sought," even when the amount of harm might differ if plaintiffs had instead brought a suit for damages). The district court did not clearly err in finding that the Named Plaintiffs are exposed to the same alleged risk under the Defendants' policies as all other inmates suffering from HCV. The Named Plaintiffs' claims are therefore typical of the class.

*B. Rule 23(b)(2)*

Plaintiffs must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For certification to be appropriate, the class claims must be "cohesive." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1035 (8th Cir. 2010) (quoting In re St. Jude Med., Inc., 425 F.3d at 1121). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Wal-Mart, 564 U.S. at 360.

This case involves claims that the Defendants uniformly applied a screening and treatment policy for HCV that was so inadequate that it amounted to a constitutional violation as to each and every incarcerated person who either suffered or will suffer from HCV. If those claims are true, they describe a party acting "on grounds generally applicable to the class." The district court engaged in a "rigorous analysis" of the evidence put forward by both Plaintiffs and Defendants before concluding that there was sufficient evidence that the party opposing the class "acted or refused to act" on grounds that apply generally to the class. As part of its analysis, the court closely examined the medical records submitted by the plaintiffs and considered

-12-

inconsistencies within the Defendants' evidence concerning the existence of a uniform policy.

Whether or not the class will be able to show that each proposed injunction is warranted on the merits is not before us. Rather, we are tasked only with determining whether the district court abused its discretion by holding that the proposed class action satisfies the requirements of Rule 23(b)(2). The district court's modified proposed injunctions identify relief that would respond to the alleged harm on a uniform, generally applicable basis. Cf. Yates, 868 F.3d at 368 (affirming class certification under Rule 23(b)(2) for claims seeking injunctive relief where "[a]ll inmates, regardless of age or health," were subject to the same policy on climate control and were "(allegedly) harmed in essentially the *same* way—*i.e.*, by exposure to a substantial risk of serious harm because of exposure to excessive heat"). While the Defendants may continue to challenge the existence and parameters of the alleged policy at trial, at this stage they are unable to show that the district court abused its discretion in holding that sufficient evidence of a common policy existed to comply with Rule 23(b)(2).

### C. Federalism Interests

The Defendants urge us to hold that this class certification decision implicates principles of federalism regarding the authority of a state to administer its own prisons. We are mindful "of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (internal quotation mark omitted) (citing Rizzo v. Goode, 423 U.S. 362, 378 (1976)). But see Brown v. Plata, 563 U.S. 493, 511 (2011) ("Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."). For that reason, in Elizabeth M. we stated that a certification decision did not pay "sufficient heed" to federalism interests where the class action sought "sweeping

-13-

injunctive relief which, if granted, would require the district court to mandate and monitor detailed programs governing nearly every facet of the State's operation" of three residential facilities. 458 F.3d at 783, 788. The injunctions sought in this case are not nearly so broad and relate only to a single policy regarding one particular illness. As we are satisfied that the Plaintiffs have satisfied Rule 23's requirements, we may wait to consider any further concerns about the balance between state and federal authority until (and if) the district court imposes an equitable remedy.

## D. Plaintiffs' Claim under the ADA

The Defendants also challenge the district court's ruling on the sufficiency of the Plaintiffs' ADA pleadings. The limited nature of our review of class certification under Rule 23(f) does not allow a defendant to make expansive arguments on the merits of the underlying appeal. See Mims v. Stewart Title Guar. Co., 590 F.3d 298, 306 (5th Cir. 2009) ("Given our limited jurisdiction in this Rule 23(f) appeal, we have no authority to review the district court's conclusion that the plaintiffs have stated a claim for these alleged overcharges under this theory."); In re Delta Airlines, 310 F.3d 953, 960 (6th Cir. 2002) ("The Rule 23(f) appeal should not become a vehicle for early review of a legal theory that underlies the merits of a class action."). A careful review of the Defendants' ADA-related arguments reveals that they do not relate to the propriety of certification under Rule 23. Instead, they present merits challenges to the Plaintiffs' claims (arguing that under the ADA plaintiffs may not challenge the inadequacy of the medical services offered). Whatever the merits of the Defendants' arguments, they do not clearly relate to whether class certification is appropriate under Rule 23. We therefore conclude that Defendants' ADA arguments lie outside our jurisdiction on this Rule 23(f) appeal.

## III.  Conclusion

We affirm the certification decision of the district court.

_____