# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1677

———————————————

Custom Hair Designs by Sandy et al.,

*Respondent*

v.

Central Payment Co., LLC,

*Petitioner*

—————————

Appeal from United States District Court for the District of Nebraska

—————————

Submitted: November 18, 2020
Filed: December 30, 2020

—————————

Before BENTON, ERICKSON and GRASZ, Circuit Judges.

—————————

BENTON, Circuit Judge.

Custom Hair Designs by Sandy and Skip's Precision Welding, LLC brought a class action alleging breach of contract, state-law fraudulent concealment, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). **18 U.S.C. §§ 1962(a), (c) & (d)**. The district court certified the proposed class. Central Payment Co., LLC (CPAY) appeals. Having jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f), this court affirms certification.

"District courts have broad discretion to determine whether certification is appropriate." ***Harris v. Union Pacific RR Co.***, 953 F.3d 1030, 1033 (8th Cir. 2020). "In reviewing the district court's certification decision, the district court's rulings on questions of law are reviewed de novo and its application of the law is reviewed for an abuse of discretion." ***Id.***

The class are over 160,000 small retailers using CPAY for credit card processing. CPAY does not employ its (loosely affiliated) agents. They use form contracts with blanks for the pricing terms, which are subject to negotiation. Individual retailers can select from two basic pricing schemes—"pass-through" or "tiered" (by class of transaction). Both focus on the price-per-transaction that credit card issuers impose. Changes to the price-per-transaction must be approved by the issuing banks under the terms of CPAY's form contract.

Plaintiffs allege CPAY misrepresented a number of fees, added fees with no value to retailers, and inflated fees without prior approval from issuing banks. Plaintiffs stress that the FTC previously barred, for fraud, CPAY's founders from selling auction guides. *See* Federal Trade Comm'n, *California Defendants that Deceptively Marketed and Sold Auction Information Guides for Homes and Cars Agree to Pay Consumer Redress to Settle FTC Charges*, Jan. 17, 2001, https://www.ftc.gov/news-events/press-releases/2001/01/california-defendants-deceptively-marketed-and-sold-auction. CPAY moved for summary judgment. In a single order, the district court denied summary judgment and certified the class.

This court has jurisdiction to review only the class certification, so a searching inquiry of the record is inappropriate. ***Postawko v. Missouri Dep't of Corr.***, 910 F.3d 1030, 1037 (8th Cir. 2018) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "Moreover, a defendant bears a more onerous burden in challenging certification where the initial certification decision was carefully considered and made after certification-related

discovery." ***Vogt v. State Farm Life Ins. Co.***, 963 F.3d 753, 765 (8th Cir. 2020) (cleaned up).

# I.

CPAY argues the district court failed to adequately explain its certification decision.[1]  The district court must engage in a "rigorous analysis" of Federal Rule 23 certification. ***Elizabeth M. v. Montenez***, 458 F.3d 779, 784 (8th Cir. 2006).  "The same analytical principles govern Rule 23(b)." ***Comcast Corp. v. Behrend***, 569 U.S. 27, 34 (2013).  This court previously rejected a "district court's predominance analysis [that] consisted of one short paragraph, which concluded that the plaintiffs 'as a whole do in fact allege and have injury' and that '[t]he same evidence will be used to establish classwide proof.'" ***Harris***, 953 F.3d at 1037-38 (second alteration in original).  "[A]t a minimum the rule requires a district court to state its reasons for certification in terms specific enough for meaningful appellate review." ***In re Target Corp. Customer Data Sec. Breach Litig.***, 847 F.3d 608, 612 (8th Cir. 2017).

CPAY argues *Harris* requires reversal. The district court here made specific findings of fact. Contrary to CPAY's assertion, the district court's decision is specific enough. In *Harris*, this court did not reverse due to a procedurally inadequate analysis of the Rule 23 prerequisites; instead, this court reached the *merits*, determining the district court abused its discretion in certifying. *See **Harris***, 953 F.3d at 1039.

Finally, CPAY ignores that the district court issued an order that included its denial of summary judgment.  Because the court addressed the merits in its summary-judgment analysis, and thus mentioned them only briefly in the class

---

[1]CPAY emphasizes that the district court's order mischaracterizes its position as including "whether the class members are 'qualified' for the position or can be reasonably accommodated before one can determine the class composition." Although careless, this oversight is harmless and does not change the analysis here.

certification section, the court need not repeat its view of the record in each section of an order. The district court here engaged in a sufficiently rigorous analysis.

## II.

"Before a class may be certified, Rule 23 requires that plaintiffs meet all of Rule 23(a)'s requirements and satisfy one of the three subsections of Rule 23(b)." *Harris*, 953 F.3d at 1033. "Rule 23(b)(3) . . . requires that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.*, *quoting **Wal-Mart Stores, Inc. v. Dukes***, 564 U.S. 338, 362 (2011).

## A.

CPAY argues that the district court erred in determining that common questions predominate. This court begins by "considering the nature of plaintiffs' claim to determine whether it is suitable for class certification." *Id.* This court does not need to conclude whether the theory of liability is viable. *Id.* at 1039. This court denies certification only if the theory of liability "is a highly individualized question that does not allow class certification under Rule 23(b)(2) and (b)(3)." *Id.*

Predominance subsumes the commonality requirement, so both can be analyzed through the lens of predominance. ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 609 (1997). Predominance gauges "the relationship between common and individual questions in a case." ***Tyson Foods, Inc. v. Bouapheakeo***, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quotation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered

proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" ***Id.***, *quoting* 7AA C. Wright, A. Miller, & M. Kane, **Federal Practice and Procedure**, § 1778, pp. 123–124 (3d ed. 2005).

1.

Common questions and common answers predominate here. ***Dukes***, 564 U.S. at 350. *First*, all claims deal with either a common scheme of fraud or a term common to all contracts with CPAY. True, the negotiated pricing terms are different and some contracts authorize some fees that plaintiffs allege were fraudulent. However, all plaintiffs allege failure to get bank preauthorization. The relevant contract term was uniform. *Compare* **Webb v. Exxon Mobil Corp.**, 856 F.3d 1150, 1156-57 (8th Cir. 2017) (finding breach of contract insufficiently common where extent of pollution was property-specific), *with* **McKeage v. TMBC, LLC**, 847 F.3d 992, 999 (8th Cir. 2017) (finding commonality satisfied where breach arose from form contract term). Plus, the statements communicating changes to billing were nearly identical.

*Second*, any pricing differences would not affect liability, only damages. If CPAY engaged in a common scheme to defraud plaintiffs, the difference between the bank-authorized pass-through costs and CPAY's charges measures only the damages to individual class members. At worst, this requires individual proof at the damages phase, which the Court approved in *Tyson*. ***Tyson***, 136 S. Ct. at 1045. Plus, to measure damages the plaintiffs plan to use CPAY's database. This mirrors the evidence approved in *Tyson*, where a statistical expert determined the average amount of time employees spent donning and doffing their gear. ***Id.*** at 1046. Slight variation in *actual damages* does not defeat predominance if there are common legal questions and common facts.

*Third*, that some contracts authorize a "PCI Noncompliance Fee" or a "TSSNF Fee" does not defeat predominance. The actual extent of inquiry required

here is cursory.  Plaintiffs' expert, in calculating damages, need identify only whether a contract authorized a PCI or TSSNF fee.  Because this inquiry is not highly individualized, it does not defeat predominance.  *See id*.

*Fourth*, that changes in bank rates cause tier shifts does not defeat predominance.  Plaintiffs' claim is that the issuing banks did not change their interchange rates, but CPAY moved whole classes of transactions to a higher-priced tier.  If issuing banks did change interchange fees, plaintiffs' claim fails.  If no change occurred, CPAY's defense fails.  *See Dukes*, 564 U.S. at 350.

2.

According to CPAY, RICO claims based on fraudulent concealment or misrepresentation in billing are not susceptible to classwide proof of reliance, especially where contracts authorized the billing practices.  Plaintiffs counter that their RICO claims stem from misrepresentations in performance, including misleading justifications for rate increases as "pass-through" costs.

"[A] plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 654, *quoting Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  The Court concluded its analysis of causation under RICO with:  "Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim." *Id.* at 655.  *Compare In re United States Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 121-22 (2d Cir. 2013) (affirming RICO certification in pricing case) *and Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629, 639

(5th Cir. 2016) (en banc) (post-*Bridge* case certifying RICO class), *with **Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.***, 319 F.3d 205, 219 (5th Cir. 2003) (pre-*Bridge* case reversing RICO certification in pricing case). *See also **Poulos v. Caesars World, Inc.***, 379 F.3d 654, 664 (9th Cir. 2004) (pre-*Bridge* case declining RICO certification).

CPAY's arguments about reliance misstate current RICO law in the same way as the petitioner in *Bridge*. Although reliance is required for common law fraud, RICO's predicate is mail or wire fraud, which did not exist at common law. ***Bridge***, 553 U.S. at 652. The requirements for common law fraud are not read into RICO. ***Id.*** Thus, plaintiffs are correct that overpayments from a pattern of systemic mail fraud in CPAY's billing would satisfy RICO's causation requirements and be common among all plaintiffs. *See **In re Foodservice***, 729 F.3d at 122 (holding fees "created for the purpose of misrepresenting cost and . . . then kept secret so as to deceive customers about overbilling" was a question amenable to common proof).

3.

CPAY argues the statute of limitations defeats predominance, alleging some claims may be time-barred. Plaintiffs counter that fraudulent concealment can toll the statute of limitations and is susceptible to classwide proof.

"If a petition alleges a cause of action ostensibly barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute." ***L.J. Vontz Constr. Co. v. Dep't of Roads***, 440 N.W.2d 664, 665 (Neb. 1989). "Under the doctrine of fraudulent concealment, the plaintiff must show that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired and that the defendant committed some affirmative act of fraudulent concealment which prevented the plaintiff from discovering his or her cause of action. ***Upah v. Ancona Bros. Co.***, 521 N.W.2d 895, 902 (Neb. 1994), *disapproved on other grounds by **Welsch v. Graves***, 582 N.W.2d 312, 316 (Neb. 1998).

Whether CPAY engaged in affirmative acts to conceal its fraudulent billing practices is a question susceptible to classwide proof. The question is not whether each individual defendant was *personally* confused, but whether CPAY's scheme of billing prevented discovering the fraud. For example, CPAY allegedly sent notices telling merchants that bank fees mandated higher prices. This statement, if false, would be an affirmative act of fraudulent concealment to each plaintiff receiving the statement. Thus, the statute of limitations does not defeat predominance here.

4.

CPAY argues state-law fraudulent concealment requires reliance. "In a typical common-law fraud case, a plaintiff must show that he or she received the defendant's alleged misrepresentation and relied on it." ***In re St. Jude Med., Inc.***, 522 F.3d 836, 838 (8th Cir. 2008). To prove fraudulent concealment, a plaintiff must show:

> "(1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment."

***Knights of Columbus Council 3152 v. KFS BD, Inc.***, 791 N.W.2d 317, 333 (Neb. 2010). "One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation." ***Bank of Valley v. Mattson***, 339 N.W.2d 923, 927 (1983).

Contrary to CPAY's assertion that agents' representations to each class member must be examined, plaintiffs focus on CPAY's intent to defraud by concealing their overall plan to raise prices illegitimately. Agent communications are relevant as a defense, but only if CPAY could prove agents *disclosed* CPAY's intention to charge higher fees without issuing bank authorization. CPAY did not introduce summary judgment evidence suggesting its agents disclosed its plans.

Plaintiffs could reasonably have relied on CPAY's representation that issuing banks authorized rate changes. *See **Knights of Columbus***, 791 N.W.2d at 333 (sending "false and misleading letters" to customers qualifies as inducing reliance). Plaintiffs accepted the validity of rate increases based on CPAY's representation that issuing banks authorized the changes. *See id.* at 334 ("[W]hen a plaintiff's inaction in response to a concealment causes damages, it is because the concealment of material information induced the plaintiff's false belief that action was not needed."). Nebraska reliance law does not defeat predominance.

## B.

CPAY argues that the named plaintiffs' claims are not typical of class members'. "Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko*, 910 F.3d at 1039. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* When typicality and commonality arguments overlap significantly, the analysis for commonality largely determines typicality. *Id.* "[T]he potential for minor 'factual variations' does not undermine the district court's conclusion that the violation allegedly suffered by the Named Plaintiffs is typical of that suffered by the class as a whole." *Id.*

The named plaintiffs' claims are typical of the class. CPAY ignores the similarities of the core claims both named plaintiffs make—the general scheme of deceptive billing, violation of the bank pre-authorization contract requirement, and

fraudulent concealment. Since plaintiffs' claims resemble the theories applicable to all class members, minor factual variations such as differences in rates do not defeat typicality.

## C.

CPAY argues that the named plaintiffs do not represent class interests adequately.[2] "Where, as here, adequacy of class representation is at issue, 'close scrutiny' in the district court is even more important given the need to protect the due process rights of absent class members." *Target Corp.*, 847 F.3d at 612. In *Target* this court found recitation of Rule 23(a)(4) insufficient without explanation or response to defendants' claim of an intraclass conflict. *Id.* at 613. Despite the defendants' timely objections, the district court there *never* analyzed the intraclass conflict claims that might have undermined the integrity of the class *as certified*. *Id.*

CPAY's claims are unlike those in *Target*. First, CPAY objects to *failure to include* members of a hypothetical class that plaintiffs did not seek to certify. *Target* deals only with an overbroad class certification that includes intraclass conflicts. Identifying and not including class members does not create an intraclass conflict, because the claims of non-class-members are not litigated. The claims CPAY discusses would thus not be precluded. *See Dicken v. Ashcroft*, 972 F.2d 231, 233 (8th Cir. 1992), *citing Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973) ("[I]nadequate representation of class precludes *res judicata* from attaching to that

---

[2]Since neither named plaintiff suffered a tier shift, CPAY argues they cannot adequately represent class interests. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). This argument misunderstands the injury here. Breach of the pre-authorization contract term could be either a tier shift or an impermissible increase in interchange fees without a tier shift. Named plaintiffs' interests align with other members suffering a slightly different breach of the same contract term. To the extent named plaintiffs are not representative, the district court may consider a motion to amend to add named plaintiffs. *See Fed. R. Civ. P. 15 & 16*; *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (leaving decision to add named plaintiffs to district court's discretion).

judgment and binding absent class members."). This case does not raise the due process concerns in *Target*, where the financial interests of *actual* class members potentially diverged. The district court did not err in determining the named plaintiffs adequately represented class interests.

D.

CPAY claims the class does not satisfy superiority. "The superiority requirement involves showing 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Perras v. H & R Block*, 789 F.3d 914, 916 (8th Cir. 2015), *quoting* **Fed. R. Civ. P. 23(b)(3)**. Class actions are superior when "the class members' claims are generally small and unlikely to be pursued individually." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018).

A class action is the superior mechanism to try this case. Plaintiffs' individual claims are for tens or hundreds of dollars. Absent a class action, no plaintiff is likely to pursue their claim individually. The district court did not abuse its discretion in finding a class action superior here.

* * * * * * *

The appealed order is affirmed.

_____